IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CADENCE BANK,<br><br>Plaintiff,<br><br>v.<br><br>TRITGEN, LLC and INDEPENDENT TEXAS RECYCLERS, LLC,<br><br>Defendants. | §<br>§<br>§<br>§<br>§  CIVIL ACTION NO:<br>§<br>§<br>§<br>§<br>§<br>§ |

## VERIFIED ORIGINAL COMPLAINT

Cadence Bank ("***Lender***"), for its Verified Original Complaint against Defendants TRITgen, LLC ("***TRIT***") and Independent Texas Recyclers, LLC ("***ITR***"; collectively with TRIT, "***Borrowers***"), states as follows:

### PARTIES

1. Lender is a banking corporation organized and existing under the laws of the State of Mississippi with its principal place of business in the State of Mississippi. Thus, Lender is a citizen of the State of Mississippi for purposes of diversity jurisdiction.

2. Upon information and belief, TRIT is a limited liability company organized and existing under the laws of the State of Delaware, whose members are Steven Ragiel ("***Ragiel***"), Paul Posoli ("***Posoli***"), Peter Ledig ("***Ledig***"), Matt Airhart ("***Airhart***"), the Matthew Charles Gordon 1989 Trust (the "***Gordon Trust***") and MC Invictus, LLC ("***MC Invictus***"), none of whom are citizens of Mississippi for purposes of diversity jurisdiction. Upon information and belief, Ragiel, Posoli, Ledig and Airhart are each adult citizens and residents of the State of Texas and are domiciled in the State of Texas. Thus, Ragiel, Posoli, Ledig and Airhart are citizens of the

State of Texas for purposes of diversity jurisdiction. Upon information and belief, the Gordon Trust is a trust organized and existing under the laws of the State of Texas, and the trustee of the Gordon Trust is Matthew Charles Gordon, an adult citizen and resident of the State of Texas, domiciled in the State of Texas. Thus, the Gordon Trust is a citizen of the State of Texas for purposes of diversity jurisdiction. Upon information and belief, MC Invictus is a limited liability company organized and existing under the laws of the State of Texas, and the members of MC Invictus are Matthew May ("*M. May*"), Robert May ("*R.May*") and Patrick Crago ("*Crago*"), Upon information and belief, M.May, R.May and Crago are each adult citizens and residents of the State of Texas and are domiciled in the State of Texas. Thus, M.May, R.May and Crago are citizens of the State of Texas for purposes of diversity jurisdiction. Thus, TRIT is citizen of Texas for purposes of diversity jurisdiction.

3. Upon information and belief, ITR is a limited liability company organized and existing under the laws of the State of Delaware, whose members are TRIT, Ragiel, Dean Gorby ("*Gorby*"), Rafael Orozco Calderon ("*Calderon*") and Dan Parsley (*Parsley*"), none of whom are citizens of Mississippi for purposes of diversity jurisdiction. TRIT and Ragiel are citizens of the State of Texas for purposes of diversity jurisdiction, as set forth in Paragraph 2 above. Upon information and belief, Gorby, Calderon and Parsley are each adult citizens and residents of the State of Texas and are domiciled in the State of Texas. Thus, Gorby, Calderon and Parsley are citizens of the State of Texas for purposes of diversity jurisdiction. Thus, ITR is a citizen of the State of Texas for purposes of diversity jurisdiction.

4. ITR owns and operates a recycling business that recycles plastics, cardboard, aluminum cans and glass, with locations at 6810 Irvington Blvd., Houston, Texas 77022; 4711

Gasmer Drive, Houston, Texas 77035; and 5200 Jensen Drive, Houston, Texas, 77025 (the "***Facilities***").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this proceeding under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL BACKGROUND

### A. The Loans

7. On or about August 19, 2022, Lender, doing business as Cadence Equipment Finance (f/k/a Bancorp South Equipment Finance) made a term loan to the Borrowers in the original principal amount of $7,244,094.45 (the "***Equipment Loan***").

8. The Equipment Loan is evidenced by, among other things, that certain Master Loan and Security Agreement by and between Borrowers and Lender dated August 19, 2022 (the "***Original Equipment Loan Agreement***"), as amended by that certain First Amendment to Master Loan and Security Agreement dated August 19, 2022 (the "***First Amendment to Equipment Loan Agreement***"), as further amended by that certain Second Amendment to Master Loan and Security Agreement dated August 26, 2022 (the "***Second Amendment to Equipment Loan Agreement***"), as further amended by that certain Third Amendment to Master Loan and Security Agreement dated August 28, 2023 (the "***Third Amendment to Equipment Loan Agreement***"; and collectively with the Original Equipment Loan Agreement, the First Amendment to Equipment Loan Agreement, and the Second Amendment to Equipment Loan Agreement, the "***Equipment Loan Agreement***"). A true and correct copy of the Equipment Loan Agreement is attached hereto as **Exhibit A**.

3

9. Pursuant to the Equipment Loan Agreement, Borrowers granted Lender a security interest in, among other things, certain pieces of equipment as more particularly described in the Equipment Schedule attached to the Equipment Loan Agreement (collectively, the "*Equipment Loan Collateral*").

10. Lender perfected its security interest in the Equipment Loan Collateral through filing a UCC financing statement with the Delaware Department of State as U.C.C. Initial Filing No. 20226971436 (the "*Equipment Loan UCC-1*"). A true and correct copy of the Equipment Loan UCC-1 is attached hereto as **Exhibit B**.

11. Lender also made a revolving line of credit to Borrowers in the maximum principal amounts of $2,000,000.00 (the "*Revolving Loan*"; and together with the Equipment Loan, the "*Loans*").

12. The Revolving Loan is evidenced by, among other things, (i) that certain Note (Revolving Loans) executed by Borrowers in favor of Lender dated August 19, 2022 in the original principal amount of $2,000,000.00 (the "*Revolving Note*"); and (ii) that certain Credit Agreement by and between Borrower and Lender dated August 19, 2022 (the "*Original Revolving Credit Agreement*"), as amended by that certain First Amendment to Credit Agreement dated August 28, 2023 (the "*First Amendment to Revolving Credit Agreement*"; and collectively with the Original Revolving Credit Agreement, the "*Revolving Credit Agreement*"). True and correct copies of the Revolving Note and Revolving Credit Agreement are attached hereto as **Exhibits C** and **D**, respectively.

13. The Revolving Loan is secured by, among other things, that certain Amended and Restated Security Agreement by and between Borrowers and Lender dated August 28, 2023 (the

"*Security Agreement*"). A true and correct copy of the Security Agreement is attached hereto as **Exhibit E**.

14. Pursuant to the Security Agreement, Borrowers granted Lender a security interest in all personal property of the Borrowers, including without limitation, all accounts and accounts receivable, general intangibles, inventory, goods, equipment, intellectual property, investment property, commercial tort claims and deposit accounts (collectively, the "*Revolving Loan Collateral*"; and together with the Equipment Loan Collateral, the "*Collateral*").

15. Lender perfected its security interest in the Revolving Loan Collateral through filing a UCC financing statement with the Delaware Department of State as U.C.C. Initial Filing No. 20227040587 (the "*Revolving Loan UCC-1*"; and together with the Equipment Loan UCC-1, the "*UCC-1s*"). A true and correct copy of the Revolving Loan UCC-1 is attached hereto as **Exhibit F**.

16. The Equipment Loan Agreement, Revolving Note, Revolving Credit Agreement, Security Agreement, UCC-1s, the Forbearance Agreement (as hereinafter defined) and any and all other documents evidencing, describing, securing, or relating to the Loan are herein referred to as the "*Loan Documents*."

17. Pursuant to the terms of the Loan Documents, the Collateral secures all of Borrowers' obligations under the Loan Documents.

**B.     Events of Default, Acceleration and Forbearance**

18. Borrowers failed to pay and perform their respective obligations under the Loan Documents, and multiple defaults occurred and remain outstanding under the Loan Documents, including, without limitation, the following (collectively, the "*Pre-Forbearance Defaults*"):

a. Borrowers failed to remit required payments of principal and interest due on April 19, 2023, May 19, 2023, June 19, 2023, and July 19, 2023 under the Equipment Loan Agreement (collectively, the "***Monthly Payment Defaults***");

b. On or about May 16, 2018 ITR executed that certain Guaranty in favor of Closed Loop Fund, LP ("***CLF***") guarantying CLF's loan to Eco Glass Recycling LLC ("***EGR***"), which was not disclosed to the Lender until after closing of the Loans, (ii) ITR loaned approximately $625,000.00 to EGR which was not disclosed to the Lender until after the closing of the Loans, and (iii) TRIT borrowed approximately $300,000.00 from Robert Yosaitis prior to the closing of the Revolving Loan, which was not disclosed to the Lender until after the closing of the Revolving Loan (collectively, the "***Affiliate Loan Defaults***");

c. Borrowers were liable for past due trade payables and other material past due accounts payable which were materially greater than those the Borrowers disclosed to the Lender prior to closing of the Loans (collectively, the "***Payable Defaults***");

d. Borrowers failed to furnish to Lender the financial information required by Sections 5.01(a), (b), (c), and (f) of the Revolving Credit Agreement and submitted to Lender inaccurate and incomplete Compliance Certificates (as defined in the Revolving Credit Agreement) (collectively, the "***Reporting Defaults***"); and

e. Borrowers' Borrowing Base and Covenant Compliance certificate dated as of June 30, 2023 reflects that Borrowers failed to maintain the required Fixed Charge Coverage Ratio and Senior Leverage Ratio (each, as defined in the Revolving Credit Agreement) as required by Sections 5.13(a) and (b) of the Revolving Credit Agreement (collectively, the "***Covenant Defaults***").

19. Lender gave Borrowers written notice of the Pre-Forbearance Defaults on December 5, 2022, May 25, 2023, and July 14, 2023. A true and correct copy of the July default letter, which incorporates each of the prior default letters, is attached hereto as **Exhibit G**.

20. As a result of the Pre-Forbearance Defaults, Borrowers and Lender entered into that certain Forbearance Agreement dated August 18, 2023 (the "***Forbearance Agreement***"), pursuant to which Lender agreed to forbear from exercising its rights and remedies on account of the Pre-Forbearance Defaults until November 15, 2023.

21. In the Forbearance Agreement, the Borrowers acknowledged that "the [C]ollateral does not and will not be able to generate sufficient income to repay the Loans in accordance with the Loan Documents … [and] in [Borrowers'] current financial condition, they are not able and will not be able to generate sufficient income to repay the indebtedness owed to the Lender in accordance with the Loan Documents."

22. Borrowers failed to pay and perform their respective obligations under the Forbearance Agreement, and multiple defaults occurred and remain outstanding under the Loan Documents, including, without limitation, the following (collectively, the "***Forbearance Defaults***"):

   a. Borrowers failed to timely execute documents requested by Lender to effect the cross-collateralization and cross-default provisions of the Forbearance Agreement (the "***CCCD Default***");

   b. Borrowers failed to engage an independent accounting firm for the production of audited financial statements (the "***Forbearance Reporting Default***");

   c. Borrowers failed to cause a field examination and report to be completed on or before October 17, 2023 (the "***Field Examination Default***"); and

7

d.  Borrowers failed to remit (i) the required proceeds received from the Swap Agreement on October 19, 2023, (ii) Borrowers' required monthly payment under the Equipment Loan on November 15, 2023, (iii) the required $25,000 payment for the Catch-Up Debt (as defined in the Forbearance Agreement), (iv) the required $25,000 forbearance fee, (v) required $5,000 renewal fee and (vi) Lender's then outstanding attorneys' fees on account of the Borrowers' various defaults under the Loan Documents (collectively, the "***Forbearance Payment Defaults***").

23. Lender gave Borrowers written notice of the Forbearance Defaults on August 30, 2023, October 30, 2023, and November 22, 2023. A true and correct copy of the November 22, 2023 default letter, which incorporates the each of the prior default letters, is attached hereto as **Exhibit H**.

24. Borrowers have failed to make a single payment to Lender under the Loans since November of 2023.

25. On March 13, 2024, Lender again gave Borrowers written notice of the Pre-Forbearance Defaults and Forbearance Defaults and notice of its intent to accelerate the Loans and declare the entire amounts outstanding on the Loans to be immediately due and payable and demanded that Borrowers cure each of the outstanding defaults. A true and correct copy of the March default letter is attached hereto as **Exhibit I**.

26. Despite demand, Borrowers failed to cure the outstanding Events of Default. On March 21, 2024, Lender gave Borrowers written notice of acceleration of the Loans and declared the entire amounts outstanding on the Loans to be immediately due and payable. A true and correct copy of the March notice of acceleration is attached hereto as **Exhibit J**.

27. Borrowers remain in default under the Loan Documents, and all amounts owing under the Loan Documents are immediately due and payable.

28. As of March 14, 2024, the amount due under the Loan Documents (exclusive of attorneys' fees and other costs of collection) was $8,003,392.01 (the "***Indebtedness***"), which consists of (i) $6,938,392.58 under the Equipment Loan ($6,439,091.43 in outstanding principal, $403,142.58 in accrued but unpaid interest, $71,158.57 in late charges, and a forbearance fee of $25,000.00) and (ii) $1,064,999.43 under the Revolving Loan ($1,013,747.22 in outstanding principal, $45,576.39 in accrued but unpaid interest, $675.82 in non-use fees, and $5,000.00 in renewal fees). Interest, fees, legal fees, collection costs, and other charges continue to accrue on the Indebtedness.

29. Additionally, pursuant to the Loan Documents, Borrowers are liable for the costs and expenses incurred by Lender in connection with Borrowers' obligations under the Loan Documents including, without limitation, attorneys' fees and other costs of collection and/or enforcing the Loan Documents, and costs of insuring, protecting, maintaining or disposing of the Collateral (together with the Indebtedness, the "***Obligations***").

## COUNT I
### Breach of Contract

30. Lender incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

31. The Loan Documents are valid and enforceable contracts, and Lender has fulfilled all conditions to its enforcement of the same.

32. Despite Lender's demands, including without limitation pursuant to the default letters, Borrowers have failed to make payment in full of its Obligations under the Loan Documents to Lender.

9

33. Borrowers' failure to pay the Obligations constitutes a breach of the Loan Documents and, as a result, Lender is entitled to recovery of all amounts owed from Borrowers on account of such breach.

## COUNT II
### Unjust Enrichment

34. Lender incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

35. Borrowers each accepted and received the benefits of, and were substantially benefited by, the Loans. Borrowers knew, or should have known, that Lender expected and was entitled to repayment of the Loans.

36. Lender is entitled to recover from Borrowers, jointly and severally, under the doctrines of quantum meruit and/or unjust enrichment in an amount of the reasonable value of the principal owed under the Loans, plus outstanding accrued interest thereon, late charges, expenses of collection, including attorneys' fees, other legally recoverable costs under the Loan Documents, and the costs of this action.

## COUNT III
### Appointment of a Receiver

37. Lender incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

38. This Court has the legal and equitable power to appoint a receiver to take possession of the Collateral.

39. Pursuant to Rule 66, this Court is authorized to appoint a receiver over the Collateral.

40. The appointment of a receiver to take control of and manage the Collateral and the Facilities is necessary and proper under the circumstances to preserve the Borrowers as a going-concern.

41. As demonstrated by, among other things, the Monthly Payment Defaults and Forbearance Payment Defaults and the Borrowers' own acknowledgment in the Forbearance Agreement, Borrowers are unable to generate sufficient revenue to pay their operating expenses and debt service.

42. In the event the Borrowers are forced to close the Facilities, the Borrowers' business will suffer irreparable harm, and the Borrowers will lose all of its remaining value as a going concern and the ability to preserve any of the remaining value of the Collateral.

43. All or substantially all of the Collateral is being subjected to and in danger of waste, loss, dissipation and impairment unless a receiver is immediately appointed and unless that receiver is allowed, among other things, to assume control of operations of the Borrowers and to take possession of the Collateral.

44. As a result, a receiver is necessary to manage, protect, maintain, and operate Borrowers, the Facilities and the Collateral, to ensure payments to other secured creditors, to possibly market the business and Collateral for sale, and to apply any amounts collected to, among other things, the costs and fees incurred by Borrowers and to the indebtedness described herein.

45. Accordingly, the equitable considerations weigh in favor of the Court's appointment of a receiver of the Collateral.

46. Lender requests that the receiver shall, at Borrowers' expense, have all of the usual powers and duties of receivers in similar cases, including, without limitation, the full power to

manage, restore, repair, maintain, hold, rent, lease, operate, sell, or otherwise use or permit the use of the Collateral, subject to Lender's approval.

## COUNT IV
## Injunctive Relief

47. Lender incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

48. In order to fortify the receiver appointed by this Court, and to protect the interests of Lender and other creditors of the Borrowers, Lender requests that this Court immediately enter a temporary restraining order until a hearing can be held on Lender's application for the appointment of the receiver, followed by a preliminary injunction to take effect for the duration of this case, or until further order of this Court.

49. Under applicable law, Lender is entitled to a temporary restraining order and a preliminary injunction. Without a temporary restraining order, the Collateral may be diverted, wasted or otherwise dissipated prior to the appointment of a receiver. Without preliminary injunctive relief, any receiver and concomitant receivership are unlikely to succeed.

50. Events of Default have occurred and continue to occur under the Loan Documents, and Lender is likely to succeed on the merits of its claims for breach of the Loan Documents.

51. Injunctive relief is necessary to aid a receiver in fulfilling its duties and obligations with respect to the Facilities and the Collateral.

52. In failing to manage the Facilities so as to generate sufficient income to pay the obligations under the Loan Documents, the Borrowers are violating Lender's rights and impairing the value of the Collateral.

53. Lender will suffer imminent harm and irreparable injury, and will be left without an adequate remedy at law unless injunctive relief is granted in aid of the receiver.

54. Immediate injunctive relief is imperative in order to prevent irreparable harm to the Collateral.

55. Granting the injunction will not harm Borrowers.

56. Lender has provided advance notice of this Complaint and its contents to the Borrowers prior to its filing.

57. Accordingly, Lender is entitled to:

    a. the immediate entry of an *ex parte* order granting a temporary restraining order pursuant to Rule 65(b) of the Federal Rules against the Borrowers, and their successors, assigns, agents, employees, attorneys, or anyone acting for or in concert with them: (i) enjoining them from wasting, diverting, or otherwise dissipating the Collateral; (ii) enjoining them from collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of the Collateral, including revenues from the Facilities, and the proceeds derived therefrom, other than to pay necessary expenses in the ordinary course of the Facilities' business ("***Permitted Expenses***"); (iii) requiring them to deposit revenues and other cash collateral derived from the Facilities remaining after the payment of Permitted Expenses into a separate escrow account to be held pending further order of this Court; (iv) enjoining them from removing any property from the Facilities and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operation of the Collateral; (v) requiring them to preserve the Collateral in such state as it existed on the date of filing this Complaint;

    b. entry of a preliminary injunction against the Borrowers, and their successors, assigns, agents, employees, attorneys, or anyone acting for or in concert with them: (i) enjoining them from possessing or managing the Facilities and from interfering in any way with

13

the possession or management of the Facilities by the receiver; (ii) enjoining them from collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of the Collateral, including revenues, and the proceeds derived from the Facilities, during and pending the appointment of the receiver; (iii) requiring them to pay the revenues and other cash collateral derived from the Facilities to the receiver; (iv) enjoining them from removing any property from the Facilities and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operation of the Collateral; (v) requiring them to pay and turn over immediately to the receiver and to perform all acts necessary to transfer to the receiver all funds on hand in cash and all funds held in deposit accounts of or for the benefit of the Facilities arising from the ownership, possession, or operation of the Facilities and all accounts, accounts receivable, and any other collectibles and all keys, books, records, equipment, and all things in any manner related to the ownership, possession or operation of the Facilities; and

   c. entry of a preliminary injunction enjoining the Borrowers, or any party who is provided with notice of the Court's order, from prosecuting any claim against the receiver or the Collateral, other than in this action and only after proper motion is filed and an order is entered allowing such party to file such claim herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Lender respectfully requests the following relief:

   i. That the Court enter judgment in favor of Lender and against Borrowers, jointly and severally, for the Obligations, including, without limitation, the principal indebtedness outstanding under the Loans, accrued and accruing interest thereon, late charges, Lender's costs

of collection (including, without limitation, attorneys' fees and expenses), any and all other amounts recoverable under the Loan Documents and the costs of this action;

  ii. That the Court appoint a receiver to take possession and control of the Collateral (including the Facilities, all related real and personal property thereto, and revenues therefrom); to maintain and preserve the Collateral, including stabilizing the operation of the Facilities; that the Court grant the receiver all of the powers, duties, authority, and protections ordinarily granted to a receiver and necessary to possess, maintain, and preserve the Collateral, including, without limitation, the power to sell the Collateral, or any part thereof, pursuant to 28 U.S.C. § 2001, *et seq.*, in accordance with such terms as are hereafter approved by Lender and the Court; that the receiver be compensated as provided herein;

  iii. That the Court grant Lender and the receiver injunctive relief as requested herein to, among other things, enjoin the Borrowers (and their agents and all parties acting by, through, or in concert with them) from interfering with the duties of the receiver, to direct the payment of revenues to the receiver, to enjoin other parties from seeking recovery against Borrowers or the Collateral, except in accordance with the relief requested herein, and for all other relief that may become necessary to maintain, preserve, and protect the Collateral and in aid of the duties conferred on the receiver by the Court.

  iv. That the Court award Lender such other and further relief as this Court deems just and proper.

15

Respectfully submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

BY: */s/ N. Chris Glenos*
**N. CHRISTIAN GLENOS**
Texas Bar No. 24113073
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
cglenos@bradley.com

**OF COUNSEL:**

**JOSHUA LESSER**
State Bar No. 24116663
JPMorgan Chase Tower
600 Travis Street, Suite 5600
Houston, Texas 77002
Telephone: (713) 576-0300
Facsimile: (713) 576-0301
jlesser@bradley.com

**ATTORNEYS FOR CADENCE BANK**

## **VERIFICATION**

I, Colton Poindexter, Vice President of Cadence Bank, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the factual allegations set forth in the above *Verified Original Complaint* are true and accurate to the best of my knowledge, information, and belief.

_____
COLTON POINDEXTER

**PLEASE RETURN SUMMONS AND COMPLAINT TO PLAINTIFF'S COUNSEL FOR SERVICE ON DEFENDANTS AS FOLLOWS:**

TRITGEN, LLC
6810 Irvington Blvd.
Houston, TX 77022

Independent Texas Recyclers, LLC
6810 Irvington Blvd.
Houston, TX 77022