United States District Court
Southern District of Texas

**ENTERED**

April 10, 2024

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| **CADENCE BANK,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **V.** | § | **Civil Action No.: 4:24-cv-01266** |
| | § | |
| **TRITGEN, LLC and INDEPENDENT** | § | |
| **TEXAS RECYCLERS, LLC,** | § | |
| | § | |
| *Defendants.* | § | |

### AGREED ORDER APPOINTING RECEIVER

The matter before the Court is the *Motion for Appointment of Receiver* (the "***Receiver Motion***") submitted by Cadence Bank (the "***Cadence Bank***"). After consideration of the Receiver Motion, Cadence Bank's Brief in Support of Motion for Appointment of Receiver, the Declaration of Alan Weiner, and the Defendants' Consents to Appointment of Receiver; and upon finding that this Court has jurisdiction over the matters raised in the Verified Complaint and Receiver Motion and that venue is proper in this Court; and after due consideration of the entire record in this matter, the Court hereby finds and concludes as follows:

### FINDINGS OF FACT & CONCLUSIONS OF LAW

1.      Cadence Bank is a Mississippi banking corporation with its principal place of business located in Tupelo, Mississippi. For purposes of diversity jurisdiction, Cadence Bank is a citizen of Mississippi.

2.      Defendant, TRITgen, LLC ("***TRIT***") is a limited liability company organized and existing under the laws of the state of Delaware. No member of TRIT is a citizen of Mississippi for the purposes of diversity jurisdiction.

3.     Defendant, Independent Texas Recyclers, LLC ("*ITR*," and collectively with TRIT, "*Borrowers*"), is a limited liability company organized and existing under the laws of the State of Delaware.  Its principal place of business is located at 6810 Irvington Blvd., Houston, Texas.  No member of ITR is a citizen of Mississippi for the purposes of diversity jurisdiction.

4.     ITR owns a recycling business, that recycles plastics, cardboard, aluminum cans and glass, with locations at 6810 Irvington Blvd., Houston, Texas 77022; 4711 Gasmer Drive, Houston, Texas 77035; and 5200 Jensen Drive, Houston, Texas, 77025 (the "*Facilities*").

**A.     The Loans**

5.     On or about August 19, 2022, Cadence Bank, doing business as Cadence Equipment Finance (f/k/a Bancorp South Equipment Finance) made a term loan to the Borrowers in the original principal amount of $7,244,094.45 (the "*Equipment Loan*").

6.     The Equipment Loan is evidenced by, among other things, that certain Master Loan and Security Agreement by and between Borrowers and Cadence Bank dated August 19, 2022 (the "*Original Equipment Loan Agreement*"), as amended by that certain First Amendment to Master Loan and Security Agreement dated August 19, 2022 (the "*First Amendment to Equipment Loan Agreement*"), as further amended by that certain Second Amendment to Master Loan and Security Agreement dated August 26, 2022 (the "*Second Amendment to Equipment Loan Agreement*"), as further amended by that certain Third Amendment to Master Loan and Security Agreement dated August 28, 2023 (the "*Third Amendment to Equipment Loan Agreement*"; and collectively with the Original Equipment Loan Agreement, the First Amendment to Equipment Loan Agreement, and the Second Amendment to Equipment Loan Agreement, the "*Equipment Loan Agreement*").

7.     Pursuant to the Equipment Loan Agreement, Borrowers granted Cadence Bank a security interest in, among other things, certain pieces of equipment as more particularly described in the Equipment Schedule attached to the Equipment Loan Agreement (collectively, the *"Equipment Loan Collateral"*).[1]

8.     Cadence Bank perfected its security interest in the Equipment Loan Collateral through filing a UCC financing statement with the Delaware Department of State as U.C.C. Initial Filing No. 20226971436 (the *"Equipment Loan UCC-1"*).

9.     Cadence Bank also made a revolving line of credit to Borrowers in the maximum principal amounts of $2,000,000.00 (the *"Revolving Loan"*; and together with the Equipment Loan, the *"Loans"*).

10.    The Revolving Loan is evidenced by, among other things, (i) that certain Note (Revolving Loans) executed by Borrowers in favor of Cadence Bank dated August 19, 2022 in the original principal amount of $2,000,000.00 (the *"Revolving Note"*); and (ii) that certain Credit Agreement by and between Borrower and Cadence Bank dated August 19, 2022 (the *"Original Revolving Credit Agreement"*), as amended by that certain First Amendment to Credit Agreement dated August 28, 2023 (the *"First Amendment to Revolving Credit Agreement"*; and collectively with the Original Revolving Credit Agreement, the *"Revolving Credit Agreement"*).

11.    The Revolving Loan is secured by, among other things, that certain Amended and Restated Security Agreement by and between Borrowers and Cadence Bank dated August 28, 2023 (the *"Security Agreement"*).

12.    Pursuant to the Security Agreement, Borrowers granted Cadence Bank a security interest in all personal property of the Borrowers, including without limitation, all accounts and

---

[1] A complete description of the Equipment Loan Collateral can be found in the Equipment Loan Agreement attached as Exhibit A to the Verified Complaint.

accounts receivable, general intangibles, inventory, goods, equipment, intellectual property, investment property, commercial tort claims and deposit accounts (collectively, the *"Revolving Loan Collateral"* [2]; and together with the Equipment Loan Collateral, the *"Collateral"*).

13.     Cadence Bank perfected its security interest in the Revolving Loan Collateral through filing a UCC financing statement with the Delaware Department of State as U.C.C. Initial Filing No. 202270400587 (the *"Revolving Loan UCC-1"*; and together with the Equipment Loan UCC-1, the *"UCC-1's"*).

14.     The Equipment Loan Agreement, Revolving Note, Revolving Credit Agreement, Security Agreement, UCC-1s, the Forbearance Agreement (as hereinafter defined) and any and all other documents evidencing, describing, securing, or relating to the Loan are herein referred to as the *"Loan Documents."*

15.     Pursuant to the terms of the Loan Documents, the Collateral secures all of Borrowers' obligations under the Loan Documents.

**B.     Borrowers' Defaults under the Loan Documents**

16.     Borrowers failed to pay and perform their respective obligations under the Loan Documents, and multiple defaults have occurred and are continuing under the Loan Documents including, without limitation, the following (collectively, the *"Pre-Forbearance Defaults"*):

a.     Borrowers failed to remit required payments of principal and interest due on April 19, 2023, May 19, 2023, June 19, 2023, and July 19, 2023 under the Equipment Loan Agreement (the *"Monthly Payment Defaults"*);

---

[2] A complete description of the Revolving Loan Collateral can be found in the Amended and Restated Security Agreement attached as <u>Exhibit E</u> to the Verified Complaint.

b.      On or about May 16, 2018,  ITR executed that certain Guaranty in favor of Closed Loop Fund, LP ("*CLF*") guarantying CLF's loan to Eco Glass Recycling LLC ("*EGR*"), which was not disclosed to Cadence Bank until after closing of the Loans, (ii) ITR loaned approximately $625,000.00 to EGR which was not disclosed to Cadence Bank until after the closing of the Loans, and (iii) TRIT borrowed approximately $300,000.00 from Robert Yosaitis prior to the closing of the Revolving Loan, which was not disclosed to Cadence Bank until after the closing of the Revolving Loan (collectively, the "*Affiliate Loan Defaults*");

c.      Borrowers were liable for past due trade payables and other material past due accounts payable which were materially greater than those disclosed by Borrowers to Cadence Bank prior to closing of the Loans (collectively, the "*Payable Defaults*");

d.      Borrowers failed to furnish the financial information required by Sections 5.01(a), (b), (c), and (f) of the Revolving Credit Agreement and submitted inaccurate and incomplete Compliance Certificates (as defined in the Revolving Credit Agreement) (collectively, the "*Reporting Defaults*"); and

e.      Borrowers' Borrowing Base and Covenant Compliance certificate dated as of June 30, 2023 reflects that Borrowers failed to maintain the required Fixed Charge Coverage Ratio and Senior Leverage Ratio (each, as defined in the Revolving Credit Agreement) as required by Sections 5.13(a) and (b) of the Revolving Credit Agreement (collectively, the "*Covenant Defaults*").

17.     Cadence Bank gave Borrowers written notice of the Pre-Forbearance Defaults on December 5, 2022, May 25, 2023, and July 14, 2023.

18.     As a result of the Pre-Forbearance Defaults, Borrowers and Cadence Bank entered into that certain Forbearance Agreement dated August 18, 2023 (the "*Forbearance Agreement*"),

pursuant to which Cadence Bank agreed to forbear from exercising its rights and remedies on account of the Pre-Forbearance Defaults until November 15, 2023.

19. In the Forbearance Agreement, the Borrowers acknowledged that "the [C]ollateral does not and will not be able to generate sufficient income to repay the Loans in accordance with the Loan Documents … [and] in [Borrowers'] current financial condition, they are not able and will not be able to generate sufficient income to repay the indebtedness owed to Cadence Bank in accordance with the Loan Documents."

20. Borrowers failed to pay and perform their respective obligations under the Forbearance Agreement, and multiple defaults occurred and remain outstanding under the Loan Documents, including, without limitation, the following (collectively, the "*Forbearance Defaults*"):

a. Borrowers failed to timely execute documents requested by Cadence Bank to effectuate the cross-collateralization and cross-default provisions of the Forbearance Agreement (the "*CCCD Default*");

b. Borrowers failed to engage an independent accounting firm for the production of audited financial statements (the "*Forbearance Reporting Default*");

c. Borrowers failed to cause a field examination and report to be completed on or before October 17, 2023 (the "*Field Examination Default*"); and

d. Borrowers failed to remit (i) required proceeds received from the Swap Agreement on October 19, 2023, (ii) Borrowers' required monthly payment under the Equipment Loan on November 15, 2023, (iii) required $25,000 payment for the Catch-Up Debt (as defined in the Forbearance Agreement), (iv) required $25,000 forbearance fee, (v) required $5,000 renewal

fee and (vi) Cadence Bank's then outstanding attorneys' fees on account of the Borrowers' various defaults under the Loan Documents (collectively, the "*Forbearance Payment Defaults*").

21.     Cadence Bank gave Borrowers written notice of the Forbearance Defaults on August 30, 2023, October 30, 2023, and August 30, 2023.

22.     On March 13, 2024, Cadence Bank again gave Borrowers written notice of the Pre-Forbearance Defaults and Forbearance Defaults and notice of its intent to accelerate the Loans and declare the entire amounts outstanding on the Loans to be immediately due and payable and demanded that Borrowers cure each of the outstanding defaults.

23.     Despite demand, Borrowers failed to cure the outstanding Events of Default. On March 21, 2024, Cadence Bank gave Borrowers written notice of acceleration of the Loans and declared the entire amounts outstanding on the Loans to be immediately due and payable.

24.     Borrowers remain in default under the Loan Documents, and all amounts owing under the Loan Documents are immediately due and payable.

**C.     Appointment of Receiver**

24.     Borrowers have consented to the appointment of a receiver.

25.     Cadence Bank is further entitled to the appointment of a receiver because the equitable considerations weigh decisively in favor of such appointment.

26.     Unless a receiver is appointed, Cadence Bank will suffer irreparable harm. Additionally, no adequate legal remedy exists under the circumstances.

27.     All stakeholders in Borrowers, including Cadence Bank and Borrowers' customers, will benefit from the appointment of a receiver experienced in operating, stabilizing and restructuring distressed recycling businesses under the oversight of this Court, which will help preserve the value of the Collateral and improve the marketability of the Facilities as a going

concern.

28.     Cadence Bank has proven its entitlement to the appointment of a receiver to ensure the economic and efficient operation of the Facilities given that: (a) there exists imminent danger that the Facilities or other Collateral will cease operations or diminish in value; (b) legal remedies are inadequate to satisfy Cadence Bank's claims; (c) no less drastic equitable remedy exists; and (d) the benefits of the appointment of a receiver outweigh any potential harm flowing therefrom.

29.     Alan Weiner (the "*Receiver*"), Senior Managing Director of Focus Management Group ("*Focus Management*"), is qualified to serve as receiver in this matter and has the requisite experience and qualifications to serve as receiver of the Facilities and other Collateral pursuant to the terms of this Order.

ORDER

Based upon the foregoing findings and conclusions, the Receiver Motion is GRANTED. Accordingly, it is ORDERED that:

A.     Alan Weiner is appointed as the Receiver over the Receivership Estate (as defined below).

B.     Within five days of the date of this Order, the Receiver shall obtain and file with the Clerk of the Court a surety bond in the amount of $5,000.00 to be provided by a corporate surety, guaranteeing performance by him of the duties and obligations of his office of receivership, the bond to be payable to this Court for loss due to the acts of all agents, servants, or employees of the Receiver and provide this Court with his written acceptance to faithfully perform the Receiver's duties as set forth in this Order.

**The Receivership Estate**

C.     Upon entry of this Order and the Receiver's acceptance of his appointment as

8

receiver of the Receivership Estate and posting of the required bond, the Receiver is directed and empowered to take from Borrowers all rights and powers of Borrowers with respect to the Collateral and the Facilities, and their administration and operation, including:

    i.    the Collateral;

    ii.    any and all real or personal property used in or related to the maintenance and operation of the Facilities, including but not limited to all equipment, fixtures, machinery, motor vehicles, automobiles, trucks, other rolling stock, leasehold improvements, construction work in progress, supplies, raw materials, inventory, goods, work in process, parts, computers, computer software (including all licenses, leases, documentation, and source codes with respect to the computer software), telecommunication systems, fixtures, furniture, furnishings, office equipment, all tangible property furnished by or used in connection with the Facilities, as well as all rights, easements, and franchises appurtenant thereto (collectively, the "*Physical Assets*");

    iii.    any and all cash, cash equivalents, bank accounts, deposit accounts, credits, prepaid expenses, deposits, deferred charges, advance payments, security deposits, prepaid items, funds, securities, investment accounts, accounts receivable, notes, notes receivable, mortgages, security interests, income, revenues derived from the Facilities, insurance claims, insurance proceeds, any and all civil claims, whether actual, contingent, or otherwise, and any and all other rights to receive payments and/or property used in, generated from, or related to the administration, maintenance, and operation of the Facilities as well as all rights, interests, licenses, and franchises related thereto (collectively, the "*Cash Equivalent Assets*");

    iv.    any and all records, documents, accounting records, contracts, and operating data and/or electronically stored information (including any and all computer operating systems in which such information is or may be stored) relating to the operation and management of the Facilities and the Collateral that is in the possession, custody, or control of Borrowers (collectively, the "*Books and Records*");

    v.    any and all contracts, licenses and permits affecting, or related to, the Facilities or its operation (collectively, the "*Contracts and Licenses*"); and

    vi.    any and all of the internet domain names, post office box numbers, telephone and facsimile numbers, and any and all other listings and numbers used by Borrowers in connection with the operation and management of the Facilities (collectively, the "*Contact Information Assets*"; and together with the Collateral, Physical Assets, Cash Equivalent Assets, Books and Records, and Contracts and Licenses, the "*Receivership Estate*").

D.      Borrowers and their successors, assigns, agents, officers, directors, members, managers, employees, attorneys, accountants, anyone acting for or in concert with Borrowers, and any persons or entities, including banks, financial or depository institutions, receiving notice of this Order and having possession or control of the Collateral, Books and Records, Cash Equivalent Assets, Contracts, Licenses, Contact Information Assets, the Facilities, and/or any and all Physical Assets are hereby ordered to immediately deliver over to the Receiver: (1) full access to all Books and Records; (2) full and exclusive control over any and all Cash Equivalent Assets (including any information required by a bank or financial or depository institution to enable the Receiver to take exclusive control over any and all Cash Equivalent Assets (e.g., access to online banking)), Contracts and Licenses, and Contact Information Assets; and (3) full access to and exclusive control over any and all Physical Assets; provided however that Borrowers' accountants, attorneys and vendors and other service providers shall have a reasonable period of time to deliver any such Books and Records to the Receiver following the written request of the Receiver for the same.

### The Receiver's Authority and Power

E.      Upon the acceptance by the Receiver of his appointment pursuant to this Order, the Receiver is granted the full power and authority to control, manage, administer, operate, and protect the Receivership Estate, and is hereby specifically vested with all statutory and common law powers, rights, and privileges of a receiver necessary to accomplish the purpose of this receivership.

F.      The Receiver is to operate and administer the Receivership Estate in an economical and efficient manner in compliance with the terms and conditions of the Loan Documents and applicable law.  The Receiver is hereby authorized and directed to recover, collect, operate, maintain, preserve, and manage the Receivership Estate in the best interests of the Receivership Estate's creditors, and to take all action deemed reasonable and necessary to ensure compliance

Case 4:24-cv-01266   Document 13   Filed on 04/10/24 in TXSD   Page 11 of 24

with all applicable requirements imposed by local, state, or federal law, and regulations promulgated by the State of Texas.

      G.    To that end, by this Order, the Court intends to give, and does hereby give, the Receiver the full power and authority to fulfill its obligations as Receiver of the Receivership Estate, including, but not limited to, the sole and exclusive right and authority to:

    i.    take complete and exclusive possession, control, and custody of and to exclusively run, operate, administer, manage, and perform all acts necessary to operate the Receivership Estate in the ordinary course of business, in accordance with the provisions of the Loan Documents and applicable state and federal law, including but not limited to entering into, modifying, and administering contracts and agreements related to or affecting the Facilities;

    ii.    take possession of all inventory, equipment, and improvements constituting the Facilities, and all books, records, and personal property relating to the Facilities, wherever located;

    iii.    take possession of all bank accounts containing funds associated with the Facilities, wherever located, and to open, transfer, and change all bank and trade accounts relating to the Facilities and the Collateral, so that all such accounts are in the name of the Receiver;

    iv.    conduct an inventory of all personal property included in the Facilities;

    v.    implement operational efficiencies and revenue enhancement programs;

    vi.    fix, charge, revise, raise, and maintain rates and charges for services furnished by the Receivership Estate;

    vii.    collect revenues derived from the Receivership Estate and apply those revenues to the expenses of operating and maintaining the Receivership Estate in such order and amount as the Receiver, in his business judgment, deems prudent and appropriate, with available resources then applied in such order as required under the Loan Documents;

    viii.    make any reasonable reductions or revisions in the Receivership Estate's operating expenses, whether or not in the ordinary course of business;

    ix.    manage, operate, maintain, and otherwise control all of the Collateral as necessary to prevent diminution of the Collateral's value including, but not limited to: (a) the receipt, collection, possession, and preservation of all accounts, incomes, profits, rents, and revenues; (b) subject to available resources in the Receivership Estate, from the date of this Order, the payment of taxes, insurance, utility charges, and other expenses and costs incurred in managing and preserving the Facilities and the Collateral, including any past due amounts necessary to restore services, coverage or good standing; (c) filing cost reports or other claims for payment, reimbursement, or otherwise; (d) if determined appropriate, the right to inspect or receive documents necessary for determining, investigating, reporting tax obligations and filing payroll tax returns; and (e) exercising any intangible rights;

x.   receive, collect, take possession of, and preserve all accounts, incomes, profits, and other revenues generated from and by the Receivership Estate, subject to the requirements of the Loan Documents;

xi.   terminate or modify any currently existing written or oral contract (other than the Loan Documents), with any and all damages arising therefrom to be paid with revenues derived from the Receivership Estate in such amounts and at such times as the Receiver deems prudent in his business judgment; provided, however, that the Receiver may not amend, modify or terminate that certain Agreement for Appointment of a Receiver, dated April 3, 2024, by and among Borrowers, Steven Ragiel and Cadence Bank (the **"Receiver Agreement"**);

xii.   assume and assign any currently existing written or oral contracts in accordance with the terms of this Order;

xiii.   enter into new contracts on behalf of the Receivership Estate for goods or services that the Receiver, in his business judgment, deems necessary or advisable for the operation of the Receivership Estate;

xiv.   file, investigate, institute, prosecute, defend, compromise, adjust, or intervene in any action or proceeding, legal, equitable, or otherwise, before this Court or any other court, agency, or tribunal, as the Receiver may deem, in his sole business judgment, to be necessary and proper for the protection, maintenance, enhancement, and/or preservation of the Receivership Estate, or to further the provisions of this Order;

xv.   investigate and determine the nature and extent of any and all prior expenditures that may have been improperly classified and take all reasonable and necessary action to have such expenses properly classified;

xvi.   investigate and determine whether all revenues have been properly accounted for and to take all reasonable and necessary action to recover any and all revenues that have been diverted away from the Receivership Estate or otherwise improperly applied and/or handled;

xvii.   institute, prosecute, defend, and settle such legal proceedings as the Receiver deems necessary relating to the recovery, collection, maintenance, protection, or proper care of the Receivership Estate, and to employ counsel therefore;

xviii.   hire, discharge, manage, and control such employees and/or staff at the Facilities, except as prohibited by law, as the Receiver determines necessary or advisable;

xix.   permit Cadence Bank and its respective agents and independent contractors and/or professionals to inspect fully the Facilities, its accounts, and all books and records, including records as to the maintenance of any portion of the Facilities, upon reasonable notice to the Receiver and subject to the waiver of any legal or work product privilege extending to information, books or records as determined by the Receiver in his business judgment;

xx.   take all such actions and expend all such sums as may be necessary and prudent in the Receiver's business judgment to obtain, maintain in effect, restore, or transfer all Licenses, insurance, zoning approvals and other approvals in an effort to ensure that the Receivership Estate may continue to be used for its intended purpose;

xxi.   enter into and/or terminate, modify, and renew contracts for any insurance with the same or different insurance providers that the Receiver believes, in his sole business

judgment, is necessary or advisable for the continued operation of the Receivership Estate in the ordinary course of business as a going concern, and to direct that the Receiver be named as an "additional insured" under any insurance policies of the Borrowers; provided, however that the Receiver shall take no action or fail to take any action which results in or could result in the termination, amendment or modification of the health insurance policy(ies) of Borrowers for the three (3) month period following the date of this Order or which would otherwise result in a breach or violation of the Receiver Agreement;

xxii.    terminate or modify, as the Receiver deems prudent in the exercise of his business judgment, any business activities of, or services provided at or in connection with, the Receivership Estate;

xxiii.    engage professionals in the ordinary course of the Facilities' business, including, but not limited to, attorneys, accountants, communication consultants, investment bankers, consultants, brokers, forensic and investigative accountants, engineers, managers and any other service providers (each a "*Professional*" or "*Service Provider*" as applicable) as the Receiver may, subject to the approval of Cadence Bank, deem necessary or advisable to assist the Receiver in the performance of his duties under this Order and agree to such terms (including financial terms) with respect to such engagements as the Receiver may deem necessary or advisable, without further order of this Court and with the reasonable fees and expenses of such Professionals and Service Providers to be payable on a current basis from the Receivership Estate as operating expenses, subject to the provisions of Sections DD and EE below;

xxiv.    comply with all requirements of all governmental authorities;

xxv.    change any and all locks on the Receivership Estate;

xxvi.    generally, do, execute, and perform any other act, deed, matter, or thing whatsoever that the Receiver reasonably believes ought to be done, executed, and performed in and about, or with respect to, the Receivership Estate;

xxvii.    take all actions necessary and appropriate to preserve, maintain, renew, and protect all contracts and licenses affecting, or related to, the Facilities or its operation to the extent the Receiver in his sole discretion determines that the said contracts and licenses should be preserved, maintained, renewed, and protected, including making all necessary filings with the regulatory bodies and agencies with jurisdiction over the Facilities;

xxviii.    execute such documents as are necessary to transfer all contracts and licenses affecting, or related to, the Collateral, the Facilities or their operations to any purchaser of the Collateral or the Facilities, including a purchaser at a non-judicial foreclosure sale which may be conducted by Cadence Bank;

xxix.    pay itself and any Professionals and/or Service Providers such fees (and reimburse such expenses) as are payable in accordance with the terms of this Order, absent contrary order of this Court;

xxx.    request and receive advances from Cadence Bank on terms mutually agreeable to Cadence Bank and the Receiver for expenses incurred by the Receiver relating to the care, preservation and maintenance of the Receivership Estate. All advances made by Cadence Bank to the Receiver shall be deemed advances under and

pursuant to the Loan Documents to protect and preserve Cadence Bank's interest in the Collateral, shall be secured by all of the Collateral, and shall have the same priority as the advance originally made pursuant to the terms of the Loan Documents. Alternatively, the Receiver may obtain advances from a third party lender for expenses incurred by the Receiver relating to the care, preservation and maintenance of the Receivership Estate; provided, however, that any third party advance (and all rights of the third party lender) shall be subordinate in all respects to Cadence Bank's right to payment under the Loan Documents and Cadence Bank's interest in the Collateral, unless Cadence Bank agrees in writing to alternative treatment;

xxxi. cause either or both Borrowers to file a petition for relief under the U.S. Bankruptcy Code if warranted in the Receiver's sole discretion; and

xxxii. generally do, execute, and perform any other act, deed, matter, or thing whatsoever that the Receiver reasonably believes ought to be done, executed, and performed in and about, or with respect to, the Receivership Estate; provided, however, that notwithstanding the Receiver's power and authority to undertake any of the foregoing, the Receiver shall have no obligation to do so if the Receiver believes, in his sole business judgment, such action would not be in the best interest of the Receivership Estate or if the Receiver lacks the resources in the Receivership Estate to fund such action after payment of other expenses of the Receivership deemed by the Receiver to be more critical.

H.    The Receiver shall have the power, in accordance with applicable law, to avoid fraudulent transfers or conveyances of any of the Collateral or the Facilities' assets or fraudulent obligations incurred by Borrowers prior to the appointment of the Receiver.

I.    The Receiver shall be bound by all applicable laws.

J.    Subject to Court approval and the written consent of Cadence Bank, the Receiver shall have the power to market all or any part of the Receivership Estate for sale.

K.    Notwithstanding anything in this Order to the contrary, the Receiver shall prepare a thirteen (13) week operating budget after reviewing the Borrowers' operations, which budget shall include projected revenues, ordinary expenses in the due course and ongoing reasonable and necessary professional fees and expenses (including fees of the Receiver and any Receiver Affiliates) and shall be subject to approval by Cadence Bank. The Receiver shall update said budget on a monthly basis and shall not materially exceed the budget without the prior written approval of

Cadence Bank. In the event Cadence Bank declines to approve any budget, expense or indebtedness that the Receiver believes is in the best interests of the Receivership Estate, the Receiver may petition the Court for approval to pay or incur same.

### The Receiver Shall Have Exclusive Control Over the Receivership Estate Without Interference

L.      The Receiver shall have full and sole control over all of the Receivership Estate, including all authorizations or other documentation necessary or desirable for the Receiver to administer, maintain, and operate the Receivership Estate in accordance with applicable law.

M.      Borrowers are hereby enjoined from administering, operating, directing, controlling or managing the business and affairs of the Receivership Estate, which authority has been vested solely and exclusively in the Receiver under this Order.

N.      Unless otherwise approved or directed by the Receiver, Borrowers, and all persons, firms, corporations and associations in any way related to, linked to, or associated with Borrowers, along with their officers, directors, stockholders, members, managers, subscribers, agents and all other persons in active concert or participation with them, are prohibited and enjoined from: (i) the transaction of further business with the Receivership Estate; (ii) the waste, transfer, or disposition of property of the Receivership Estate; (iii) doing any action or thing whatsoever to interfere with the taking control, possession and administration by the Receiver of the Receivership Estate; (iv) interfering in any way with the exclusive jurisdiction of this Court over the Receivership Estate; (v) the institution or further prosecution of any action or proceedings against the Receiver, the Receivership Estate or its assets, except before the Court; (vi) the filing of any petition for relief against or on behalf of Borrowers pursuant to Title 11 of the United States Code; (vii) withholding from the Receiver books, accounts, documents, records or any other part of the Receivership Estate relating to the business of the Receivership Estate; and (viii) any other threatened or contemplated

15

action that might lessen the value of the Receivership Estate, impede the Receiver's discharge of his duties, prejudice the rights of Cadence Bank or other creditors, or interfere with any proceeding initiated by the Receiver.

O.      Borrowers, along with their agents, employees, officials, officers and successors and assigns, shall fully cooperate with the Receiver in all matters related to this Order and the operation and administration of the Receivership Estate, including but not limited to executing all documents, providing all authorizations, and taking any other action that the Receiver believes is necessary or desirable to facilitate the operation of the Receivership Estate or to exercise its powers as Receiver; provided, however, that Borrowers shall not be obligated hereunder to terminate, amend or modify the Receiver Agreement.

P.      The Receiver's full and sole control of the Receivership Estate shall not in any way diminish the duties and cooperation required by Borrowers, along with their agents, employees, officials, officers and successors and assigns, under this Order.

Q.      Upon notice of this Order, any person or entity, bank, financial or depository institution, or any employee or agent of such person or entity, shall be deemed to be required to comply with all terms of this Order until this Court shall have relieved such person from the terms of this Order by subsequent order.

R.      ~~All civil legal proceedings of any nature related to any property of the Receivership Estate are stayed in their entirety and all courts having any jurisdiction thereof are enjoined from taking or permitting any action in connection with such proceeding until further Order of this Court~~. All members and affiliates of Borrowers are ~~likewise~~ stayed from pursuing collection of any loans or accounts owed to them by Borrowers.

**The Receiver's Rights and Obligations**

S.      The Receiver and any other Professional or Service Provider engaged by the Receiver (collectively, the "*Receiver Affiliates*") shall owe duties only to the Receivership Estate and the Court, but not to Cadence Bank, Borrowers, or any other third party.  The Receiver's retention of the law firm of Bryan Cave Leighton Paisner to assist and represent the Receiver is hereby approved.  The Receiver is, without further approval of the Court, authorized to engage Focus Management Group, an affiliate of the Receiver, to assist the Receiver in the performance of his duties under this Order should he determine that it is in the best interests of the Receivership Estate to do so.

T.      The Receiver shall make an accounting and keep accurate records concerning the Receivership Estate, including the actual revenues collected, any protective advances made by Cadence Bank to the Receivership Estate, and expenses paid each month, and make such records available to Cadence Bank, Borrowers and the Court during normal business hours and upon reasonable notice.

U.      The Receiver shall permit Cadence Bank and its respective agents and independent contractors, to inspect the Receivership Estate and the Receiver's records with respect to the Receivership Estate during normal business hours and upon reasonable notice and subject to any attorney-client or work product privilege with respect to such records, which may be waived in the Receiver's sole business judgement.

V.      The Receiver shall have the absolute right, but not the duty, to change any accounts or other investment funds in which the Cash Equivalent Assets are currently maintained to any other account or fund if such change is in compliance with the terms of the Loan Documents and this Order.

W.    The Receiver and Receiver Affiliates shall not have personal liability for any liabilities of the Receivership Estate or obligations incurred pursuant to the terms of this Order or any other order of this Court and, in the event any such liability or obligation is at any time asserted against the Receiver Affiliates, the Receiver may use revenues derived from the Receivership Estate to contest any such claimed liability and to pay, compromise, settle or discharge such claimed liability on terms reasonably satisfactory to the Receiver, and such expenses shall constitute operating expenses of the Receivership Estate.

X.    The Receiver and Receiver Affiliates shall perform the duties and obligations imposed on them by this Order with reasonable diligence and care under the circumstances and neither the Receiver nor any of the Receiver Affiliates shall be personally liable to Cadence Bank, Borrowers, or any third party except for such of their own acts as shall constitute fraudulent or willful misconduct as determined by a Final Order.  For purposes of this Order, "Final Order" shall mean an order or judgment of this Court as to which: (a) the time to appeal, petition for certiorari, or file a motion for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for re- argument or rehearing shall then be pending; or (b) in the event that an appeal, writ for certiorari, re-argument or rehearing has been sought, the time to take any further appeal, petition for certiorari, or request for re-argument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order, as long as such a motion has not actually been filed.

Y.    The Receiver and Receiver Affiliates shall be defended, held harmless, and indemnified from time to time by the Receivership Estate against any and all losses, claims, costs, expenses and liabilities (including reasonable legal fees, costs and expenses), and any costs of

defending any action, suit, proceeding or investigation to which the Receiver or Receiver Affiliates may be subject, by reason of their execution in good faith of their duties under this Order or any other order of this Court; provided, however, such indemnity shall be payable solely from the Receivership Estate.

Z.     Any actions or proceedings which involve the Receiver, any Receiver Affiliate, or the Receivership Estate or relating in any way to the Receivership Estate or the administration, operation or control of the Receivership Estate by the Receiver shall be filed in this Court, and no judgment of any party other than the Cadence Bank shall be enforced against the Receivership Estate absent further order of this Court.

~~AA.     As an appointee of this Court, the Receiver and Receiver Affiliates shall~~ enjoy ~~judicial immuni~~ty.

BB.     The Receivership Estate shall be subject to and liable for only such local, state, and federal payroll taxes that accrue during the pendency of the Receivership and for which the Receivership Estate would have become liable when operated by Borrowers. The Receiver shall ensure that payroll tax returns are filed during the pendency of the Receivership.

CC.     Notwithstanding anything in this Order to the contrary, nothing contained in this Order shall be deemed to be either an assumption of liability by the Receiver or Cadence Bank, or a requirement that the Receiver or Cadence Bank fund the costs of this receivership or the operating expenses of the Facilities, which costs and expenses shall be paid exclusively from the revenues derived from the Facilities and the Collateral and the assets comprising the Facilities and the Collateral, which revenues and assets, including accounts and deposit accounts of Borrowers or proceeds from the sale of the Collateral, are vested in the Receiver pursuant to this Order.

**Payment of Fees and Costs**

DD.    The Receiver shall file applications for payment of the Receiver's and Receiver Affiliates fees and expenses on the twentieth (20th) day of each calendar month. Unless a party files a written objection to the application for payment within fourteen (14) calendar days of the filing of the application for payment, the application shall be deemed approved and the Receiver is authorized to pay the fees and expenses of the Receiver and the Receiver Affiliates as necessary expenses of operation of the Facilities without further order of the Court.

EE.    The Receiver's compensation for its services under this Order, not including any fees or expenses of any Receiver Affiliates (which shall be paid as operating expenses of the Receivership Estate as provided herein), shall be $425/hour as Senior Managing Director of Focus Management, plus the Receiver's reasonable and necessary out-of-pocket expenses directly related to the performance of the Receiver's duties under this Order, including, but not limited to, local housing, meals, travel, local transportation, and transportation to and from: (a) the primary residence of Receiver personnel providing services under this Order; (b) the Receiver's primary office; and (c) the Facilities.  The Receiver shall be permitted to utilize members of Focus Management when necessary, appropriate and reasonable in the interests of economy at the following rates: Business Analyst ($325/hr.) and Admin Support ($75/hr.).

FF.    Fees and expenses payable to the Receiver and Receiver Affiliates under this Order shall be treated as priority administrative claims against the Receivership Estate, and payment of such amounts in accordance with this Order shall take priority over payment of any claims arising prior to the date on which the Receiver is appointed.

**Administrative Matters**

20

GG.    The Receiver may only be removed by order of this Court upon appropriate motion, notice, and hearing, after a showing of good cause by Cadence Bank or Borrowers.

HH.    Within 14 days of the Receiver's acceptance of appointment, Borrowers shall provide the Receiver with a sworn statement listing: (a) the identity, location and estimated value of all property, books, records, contracts and other assets of Borrowers or related to and/or appurtenant to the Facilities; (b) the names, identities, and contact information (telephone, mailing address, and email address) of all employees, contractors, subcontractors, accountants, attorneys, other personnel, and any other agents providing goods or services to or in connection with Borrowers or the Facilities; (c) a complete inventory of Borrowers' assets and liabilities, including any ongoing litigation related to the Facilities, Borrowers or their operations; and (d) copies of all Contracts and Licenses, agreements, leases, and service agreements related to Borrowers or the Facilities.

II.    Within three (3) months after entry of this Order, and at such regular intervals of three (3) months thereafter until discharged, the Receiver shall file with this Court operating reports concerning the financial results of the operation of the Receivership Estate.

JJ.    The Receiver may seek direction from this Court on any matter related to this Order, including, but not limited to, relief from or modification of the provisions of this Order.

KK.    The Receiver may seek such other and further orders of this Court as it deems necessary or expedient to carry out his duties and responsibilities under this Order.

LL.    The Receiver may resign and be discharged of his responsibilities at any time by giving thirty (30) days' prior written notice to this Court, Cadence Bank and Borrowers; provided, however, that the Receiver may petition this Court to approve such resignation and discharge upon shorter notice for good cause shown.

21

MM.   At the completion of the Receiver's duties set forth in this Order, or at such earlier time as the Receiver has determined that the purposes of this Order may no longer be effectively fulfilled by the Receiver, the Receiver may file a motion seeking to terminate his responsibilities as Receiver and the Court supervision of the Receivership Estate.

NN.   Upon the satisfaction and discharge of all indebtedness and obligations secured under the Loan Documents, the Court shall enter an Order, as appropriate, terminating the receivership.

OO.   As needed until the Receiver is fully ready to begin exercising his authorities and powers as set forth above, Borrowers shall avoid harm to the Receivership Estate and ensure the Receiver can carry out his responsibilities as required by this Order.

PP.   Borrowers, their successors, assigns, agents, employees, members, managers, attorneys, or anyone acting for or in concert with them shall be prohibited from: (i) possessing or managing the Facilities (unless requested or approved by the Receiver) and from interfering in any way with the possession or management of the Facilities by the Receiver; (ii) collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of the Collateral, including any revenues and profits derived therefrom, during and pending the appointment of the Receiver; or (iii) removing any property from the Facilities and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operating of Borrowers, the Facilities and the Collateral; provided, however, that Borrowers' legal counsel may apply all existing retainers to the payment of Borrowers' actual and reasonable legal expenses and shall remit any remaining balance to the Receiver.

QQ.   Further, Borrowers are required to pay to the Receiver any revenues and other cash

collateral in their possession or control derived from the Facilities and other Collateral, and are required to immediately pay and turn over to the Receiver and to perform all other acts necessary to transfer to the Receiver all funds on hand in cash and all funds held in deposit accounts for the benefit of the Facilities or arising from the ownership, possession, or operating of the Facilities and all accounts, accounts receivable, and any other collectibles, and all keys, books, records, equipment, and all things in any manner related to the ownership, possession, or operation of the Facilities.

RR.    Further, Borrowers, and any other party with notice of this Court's order, are prohibited from prosecuting any claim against the Receiver or the Collateral, other than in this action and only after a proper motion is filed and an order entered allowing such party to file such a claim herein.

### Effect of Order and Jurisdiction

SS.    Except as expressly set forth in this Order, the terms and conditions of the Loan Documents and any documents related to the Loan Documents, including the rights, property, powers, authority and assets conferred in such documents, remain in full force and effect.

TT.    Except as expressly set forth in this Order, nothing in this Order shall act to divest in any way Cadence Bank of any collateral, property or asset under the control of Cadence Bank or enjoin or otherwise prohibit Cadence Bank or from pursuing any other remedies as provided in the Loan Documents or under applicable law.  All of Cadence Bank's claims and causes of action against Borrowers shall be preserved and shall not be deemed waived, compromised, released or prejudiced in any way by this receivership proceeding. This receivership proceeding shall not bar or preclude Cadence Bank, under the doctrines of collateral estoppel, res judicata, or any other doctrine or preclusion, from asserting or maintaining any claims or causes of action against

Borrowers, including, but not limited to, any claims or causes of action for recovery of amounts owed under the Loan Documents or proceedings by foreclosure, either non-judicial or judicial, or otherwise to sell the Collateral or any portion of the Collateral. Nothing in this Order shall be deemed or construed as placing Borrowers under the control or management of Lender.

UU.    Nothing in this Order shall relieve Borrowers or the Facilities of any obligation or liability under any existing judgment, order or decree.

VV.    Until the Receiver is discharged and this receivership is terminated, the Court retains jurisdiction over this matter to: (i) amend, supplement or delete any provision of this Order; (ii) enforce compliance with or to punish violations of this Order; and (iii) order any additional actions or remedies as may be appropriate or reasonably necessary.

WW.    The reversal or modification on appeal of this Order shall not affect ~~the validity~~ of ~~any actions taken in good faith by the Receiver,~~ the payment of compensation to which the Receiver or Receiver Affiliates are entitled, or the payment of expenses incurred by the Receiver or Receiver Affiliates pursuant to this Order.

XX.    This Order shall be immediately effective upon its entry and shall continue until further order of this Court.

DONE and ORDERED the 10th day of April, 2024.

_____
UNITED STATES DISTRICT JUDGE