UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CADENCE BANK,** | § § § | |
| *Plaintiff*, | § § § | |
| V. | § § | Civil Action No.: 4:24-cv-01266 |
| **TRITGEN, LLC and INDEPENDENT TEXAS RECYCLERS, LLC,** | § § § § | |
| *Defendants*. | § § | |

### RECEIVER'S SECOND MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING THE RECEIVER'S ENTRY INTO AND PERFORMANCE UNDER THE ASSET PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF

Alan Weiner of Focus Management Group (the "Receiver"), by and through undersigned counsel, hereby submits this second motion (the "Second Sale Motion") for authorization and approval to sell certain assets of the receivership estate free and clear of any and all security interests, liens, claims, charges, reservations of ownership, pledges, encumbrances, mortgages, adverse claims and rights of any receivership estate creditor including Cadence Bank; authorization and approval to close and consummate the sale transaction (the "Second Transaction") pursuant to the Asset Purchase Agreement which is attached hereto as Exhibit 1 (the "Second APA"); and for related relief.

This is the second motion filed by the Receiver seeking authorization to sell certain assets of the receivership estate. The transaction contemplated in the first motion did not close and was terminated. The Receiver has initiated an asset liquidation through an auctioneer, which will proceed in the event the Second Transaction does not close. However, the Second Transaction (i) contemplates a higher purchase price ($1.35 million, plus an amount equal to ongoing rent payments at one of the locations for up to 90 days); (ii) includes a $150,000 non-refundable deposit

1

(except for specific enumerated circumstances); and (iii) has a relatively short outside closing date of March 31, 2025. Further, the Second Transaction does not include assumption of any ongoing estate liabilities <u>except for</u> those associated with one of the real property leases to be assumed by the proposed purchaser (the "Second Purchaser"); and there are no due diligence or financing contingencies.

The Second Transaction is the result of additional efforts by the Receiver to maximize value for the receivership estate and its creditors. The Second Transaction is expected to net a higher return than an asset liquidation auction; but if the Second Transaction does not close, the Receiver is simultaneously moving forward with the asset liquidation auction so as not to disrupt or delay that process. Any liquidation auction expenses incurred by the Receiver running these two processes simultaneously (which limited expenses are expected remain within the $150,000 non-refundable Second Transaction deposit) will be paid from the proceeds of the Second Transaction.

The Second Purchaser is willing to acquire the assets subject to, *inter alia*, entry of an order providing that such acquisition is free and clear of all liens, claims and interests, and the Second Purchaser should be entitled to the protections of a good faith transferee for value.

The Receiver is not, in this Second Sale Motion, asking for approval and authorization to distribute the proceeds of the Second Transaction, <u>except those to be paid to the liquidation auctioneer</u> in the event the Second Transaction closes. In the event this Second Sale Motion is approved and the Second Transaction closes, the Receiver expects, shortly thereafter, to liquidate or abandon any remaining assets (e.g., certain intangible assets) which the Receiver believes are of inconsequential value; and to file a final report, proposed distribution, and request for discharge, thereby concluding his role as Receiver.

In support of this Second Sale Motion, the Receiver respectfully would show as follows:

## RELEVANT BACKGROUND

**I.    LEAD-UP TO APPOINTMENT OF RECEIVER**

Defendant Independent Texas Recyclers, LLC ("ITR") owned and operated a recycling business that recycles plastics, cardboard, paper, aluminum cans, and glass at facilities located at 6810 Irvington Blvd., Houston, Texas (the "Irvington Facility"); 4711 Gasmer Drive, Houston, Texas (the "Gasmer Facility"); and 5200 Jensen Drive, Houston, Texas (the "Jensen Facility"). *See* Agreed Order Appointing Receiver, Docket No. 18 ("Receivership Order"), para. 4.

Cadence Bank ("Cadence") initiated this case on April 5, 2024, after its borrowers, ITR and ITR's affiliate TRITgen, LLC ("TRITgen" and, together with ITR, "Defendants"), defaulted under (i) a term loan made to Defendants in the original principal amount of $7,244,094.45 (the "Equipment Loan"); and (ii) a revolving line of credit made to Defendants in the maximum principal amount of $2,000,000.00 (the "Revolving Loan" and, collectively with the Equipment Loan, the "Cadence Loans"). *See*, Receivership Order, paras. 5-24. Cadence accelerated the maturity date and declared the entire outstanding balance due and payable; as of March 24, 2024, Cadence alleges that the outstanding balance of the Cadence Loans was more than $8 million. *See* Verified Original Complaint, Docket No. 1, paras. 26, 28.

**II.   APPOINTMENT OF THE RECEIVER**

At Cadence's request, the Receiver was appointed pursuant to the Receivership Order to take possession and control over all of the ITR business assets (the "Receivership Estate"). *See* Receivership Order. The Receivership Estate consists solely of personal property interests (e.g., equipment, inventory, and general intangibles) and the recycling business operated under real property leases.

Upon assuming control over and overtaking operations of the ITR business on or about April 15, 2024, with the consent of Cadence, the Receiver explored options for maximizing creditor recovery including, among other things, selling the ITR business as a going concern. *See* Declaration of Alan L. Weiner in Support of Sale Motion ("Receiver Declaration") filed concurrently herewith, para. 4. The Receiver has operated the ITR business, implementing various

cost-savings measures with an additional $300,000 in financing provided by Cadence. *See id.*, para. 13. Under the Receiver's operational control, and with the exception of legal and professional fees associated with the receivership, the ITR business had effectively run operationally at a break-even pace, despite several setbacks including Hurricane Beryl that impaired operations for several days in July 2024. *See id.* However, in the Receiver's business judgment, the ITR business could not continue operating independently as a going concern, and its future (if any) relied on an acquisition by a strategic buyer. *See id.*, paras. 4-17.

### III.   THE FIRST SALE MOTION

On October 11, 2024, the Receiver filed a sale motion (ECF No. 39, the "First Sale Motion") seeking entry of an order approving the Receiver's proposed sale of certain assets and liabilities to a proposed purchaser for the gross sale price of $2.2 million. *See* Receiver Declaratoin, para. 5. As described in the First Sale Motion, the Receiver undertook an intensive and focused marketing effort to identify potential purchasers, resulting in a single proposed purchaser willing to acquire the assets of the receivership estate (the "First Purchaser"). *See* ECF Nos. 39, 46. The Court granted the First Sale Motion, and the Receiver moved forward to close the transaction. *See* ECF No. 48. The parties modified the transaction twice, including a purchase price reduction to $1.2 million. *See* ECF No. 46. As described in the Sale Status Report filed December 6, 2024 (ECF No. 52), the failure of conditions not within either the Receiver or the First Purchaser's control resulted in termination of the transaction.

The Receiver then initiated a liquidation process to be conducted by a professional liquidation auction firm, PPL. The Court approved the Receiver's engagement of PPL (ECF No. 57), and PPL has commenced its efforts to conduct a liquidation of the receivership estate's assets. The liquidation auction, if it proceeds, is expected to take place in early April 2025. *See* Receiver Declaration, para. 9.

While working towards the liquidation, the Second Purchaser has emerged and has executed the Second APA (attached here as Exhibit 1) to acquire virtually all, if not all, of the tangible assets (equipment, inventory, machinery, etc.) of the receivership estate, but not accounts,

4

cash, or certain other intangible assets, for the gross purchase price of $1.35 million.  *See* Receiver Declaration, para. 8; *see also* Exhibit 1.  In addition, to facilitate equipment removal and clean-up activities, the Second Purchaser will reimburse the receivership estate for the base rent payments due on the Gasmer site, which is a leased location that the Second Purchase will not be occupying.  The Second Purchaser is conducting its due diligence leading up to the closing.  The Second Purchaser has agreed to pay – and has paid – a $150,000 deposit, which is <u>non-refundable</u> except for a single specific enumerated circumstance:  This Court authorizes competing bids, and a competing bidder out-bids the Second Purchaser and closes on its higher and better offer.  Thus, the Receiver has already improved the condition of the estate by adding $150,000 to the estate to support the estate's administrative burdens (thereby improving returns to creditors).

The Receiver is not aware of any facts to suggest the Second Purchaser conducted itself in bad faith; engaged in fraud or collusion in any respect; or pursued anything other than an arms' length negotiation.  *See* Receiver Declaration, paras. 8, 11.  Rather, the Receiver believes that the Second Purchaser engaged with the Receiver in good faith, arms' length negotiations resulting in the highest and best offer for acquiring the Purchased Assets.  *Id.*, paras. 8-11.  Further, as with the First Motion, the sale process conducted by the Receiver afforded a full, fair and reasonable opportunity for any of the likely buyers to make a higher or otherwise better offer.  *Id.*, paras. 6-9.

The Receiver believes, in his business judgment, that the Second Transaction constitutes the highest and best disposition of the assets of the Receivership Estate to maximize creditor recovery.  *Id.*, paras. 8, 10, 13.  Notwithstanding, the Receiver anticipates the Second Transaction will generate insufficient proceeds to pay all administrative claims and the full outstanding balance owed to Cadence, let alone payments to other Receivership Estate creditors.  *Id.*, para. 9.

## THE PURCHASE TRANSACTION

Attached hereto as Exhibit 1 is the Second APA that has been negotiated between the Receiver and the Second Purchaser.  In broad strokes, the Second APA provides that the Receiver will sell to the Second Purchaser, and the Second Purchaser will purchase from the Receiver, virtually all of the tangible assets of the Receivership Estate (i.e., equipment, machinery, and

inventory owned by the Company, the "Purchased Assets") for a gross sale price of $1,350,000 paid in full by the "Closing Date" which is, by the terms of the Second APA, no later than March 31, 2025 (unless otherwise extended by the parties in writing). The Second Transaction is conditioned upon, among other things: (i) the entry of an order of this Court (acceptable to Second Purchaser) approving the Second APA, authorizing and confirming the Second Transaction, and vesting in and to the Second Purchaser all right, title and interest in and to the Purchased Assets, free and clear of any and all liens, claims and interests; (ii) this Court approving the Second Transaction and entering an order effecting the transfer of the Purchased Assets free and clear of any and all liens, claims and interests; and (iii) assumption of the Irvington Facility lease by the Second Purchaser, and the reimbursement by the Second Purchaser to the estate of up to 90 days' rent payments for the post-closing occupancy of the Gasmer Facility[1] and (iv) payment by the Second Purchaser of the balance of the Purchase Price at closing. The Second Transaction contemplates return of the deposit to the Second Purchaser only in the event this Court orders the Receiver to seek competing offers and as a result, the Receiver accepts and closes on a higher and better offer. *See* Exhibit 1.

Cadence, the senior lienholder whose claim exceeds the maximum proposed gross sale price, consents to the Second Transaction.

If the Second Transaction is approved and is closed, there may be some remnant assets remaining in the Receivership Estate that will need to be liquidated and/or abandoned (e.g., certain intangible assets). *See* Receivership Declaration, para. 14. If the Second Transaction is not approved or does not close, the Receiver will proceed with the scheduled liquidation auction in order to wind up this receivership estate within the coming months. *See id.*, para. 9. Accordingly, regardless of the outcome of this Second Sale Motion, the Receiver expects to conclude this receivership shortly after this Second Sale Motion is resolved. A successful closing of the Second

---

[1] The Gasmer Facility landlord has been notified that the Second Purchase will be reimbursing the Receiver for up to 90 days' continued occupancy of the site in order to facilitate equipment removal and clean-up activities. The Jensen Facility is not included in the Second Transaction.

6

Transaction is expected to generate more in proceeds available for distribution than an auction liquidation and/or abandonment of the Receivership Estate assets. *Id.*, para. 15.

The Second Purchaser desires to close on the Second Transaction as quickly as possible to avoid any deterioration of the Purchased Assets. Although the Receiver has dramatically limited the ongoing operational expenses of the estate by discontinuing operations, the Purchased Assets will need to be protected and safeguarded until the Second Transaction closes and the Second Purchaser takes over the Irvington Facility lease. Accordingly, any delay in closing the Second Transaction may result in a lower recovery to the Receivership Estate. *See id.* The Receiver is not, through this Second Sale Motion, seeking authority or permission to distribute the net proceeds of the Transaction other than the expenses incurred by simultaneously preparing for a liquidation auction in the event the Second Transaction does not close. *Id.*, para. 16. Rather, the Receiver intends to apply to this Court for an order authorizing distributions to pay remaining administrative liabilities, and ultimately to creditors, to the extent the Second Transaction successfully closes. *Id.*.

## **LEGAL AUTHORITY**

The Court's authority to impose and administer a receivership originates from its inherent powers as a court of equity. *See United States v. Durham*, 86 F.3d 70, 72 (5th Cir. 1996). A federal court exercises broad powers and wide discretion in crafting relief in a receivership proceeding. *United States v. Garcia*, 474 F.2d 1202, 1205–06 (5th Cir. 1973) (reviewing the district court's decision under an abuse of discretion standard). The Court's broad authority over a receivership estate includes the equitable power to approve the sale of property free and clear of all liens, claims, interests, and encumbrances. *See Mellen v. Moline Malleable Iron Works*, 131 U.S. 352, 357 (1889) ("[T]he removal of alleged liens or incumbrances upon property, the closing up of the affairs of insolvent corporations, and the administration and distribution of trust funds are subjects over which courts of equity have general jurisdiction.").

A sale of personal property under an order of this Court is subject to 28 U.S.C. § 2001, unless the Court orders otherwise. 28 U.S.C. § 2004. Section 2001, which applies to the sale of

real property, provides, among other things, that property in the possession of a receiver shall be sold by public sale in the district where any such receiver was first appointed. 28 U.S.C. §2001 (a). Consistent with this legal framework, the Receivership Order authorized the Receiver to market all or any part of the Receivership Estate for sale. *See* Receivership Order, para. J.

Sound business justifications support this Court's approval of the Second Transaction. The Receiver engaged in an effective marketing and sale process that afforded numerous strategic buyers an opportunity to extend an offer to purchase assets of the Receivership Estate. As a result of those efforts, the Purchaser pursued a sale pursuant to the First Motion, which ultimately terminated. This Second Motion contemplates the next best opportunity available to maximize recovery for the estate and its creditors. The Receiver has concluded that the execution of the Second APA, and the sale of the Purchased Assets to the Second Purchaser under the terms set forth under the Second APA, is a sound exercise of his business judgment and is in the best interests of the Receivership Estate and its creditors. Accordingly, the Receiver believes that he has satisfied his duties under the Receiver Order.

Importantly, Cadence asserts a senior lien interest in virtually all, if not all, of the Purchased Assets; but the outstanding balance due and owing to Cadence exceeds the realizable value for the Purchased Assets. Thus, if Cadence were to simply conduct its rights under the UCC to sell the assets, and if Cadence were to achieve the same price as set forth under the Second APA, any junior liens would be similarly extinguished with no recovery. Thus, the Second APA and the sale free and clear of liens, claims and interests accomplishes precisely what would occur under a UCC sale but on a more efficient basis. Cadence, for its part, consents to the Second Transaction. In exchange for a release of its liens, claims and interests against the Purchased Assets, Cadence's liens, claims and interests (and all other liens, claims and interests) will attach to the sale proceeds. Notwithstanding, the Second Transaction is expected to generate net sale proceeds that remain insufficient to repay the outstanding obligations owed to Cadence. Further, there will be no net sale proceeds distribution, other than payment of liquidation expenses as applicable, absent further order of this Court.

Second Purchaser has engaged in this arms' length transaction in good faith. Accordingly, the order approving this Second Sale Motion should afford the Second Purchaser with the protections of a good faith purchaser for value. *See* TEX. BUS. & COMM. CODE § 2.403 (Texas version of the Uniform Commercial Code provision defining a good faith purchase as a purchaser, that gave value, and acted in good faith).

Procedurally, courts have exercised discretion to waive certain requirements of 28 U.S.C. § 2001 under appropriate circumstances. *See, e.g.*, *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-CV-7581, 2015 WL 5180678, at *7 (N.D. Ill. Sept. 4, 2015) (receiver's sale approved notwithstanding non-compliance with certain sections of 28 U.S.C. § 2001); *United States v. Nipper*, Case No. 11-460, 2015 WL 4664921, at *1 (D.N.M. July 2, 2015) (receiver's sale motion granted explaining that courts have "broad discretion" to apply the terms and conditions of a sale under 28 U.S.C. § 2001). Courts have similarly exercised discretion in flexibly applying the requirements of 28 U.S.C. § 2001 when considering sales of personal property under 28 U.S.C. § 2004. *See, e.g.*, *Fed. Trade Comm'n v. Consumer Def., LLC*, No. 2:18-cv-30JCM (PAL), 2019 WL 266287, at *4 (D. Nev. Jan. 18, 2019) (excusing private sale appraisal requirement under 28 U.S.C. § 2001(b) in connection with a sale of personal property under 28 U.S.C. § 2004).

Given the time-sensitive nature of the proposed Second Transaction, the efforts undertaken by the Receiver to market the ITR business, the willingness of the Second Purchaser to close on short notice, and Cadence's unwillingness to continue funding further costs associated with the receivership, the Receiver is filing a separate motion for additional relief, including relief from strict compliance with 28 U.S.C. § 2002, reducing the period for filing responses to this Second Sale Motion, and requesting the prompt setting of a hearing to the extent the Court deems a hearing is required.

## **RELIEF REQUESTED**

WHEREFORE, the Receiver respectfully requests that the Court enter an order, the proposed form of which accompanies this Second Sale Motion: (i) granting this Second Sale Motion; (ii) authorizing the Receiver's sale of the Purchased Assets free and clear of all liens,

claims, and interests pursuant to the terms of the Second APA, with authorization to pay only the liquidation auction expenses upon closing of the Second Transaction and, as applicable, return of Second Purchaser's deposit in the event a higher and better offer closes; (iii) providing the Second Purchaser with the protections of a good faith purchaser for value; (iv) authorizing and approving the Receiver's entry into and performance under the Second APA; and (v) granting related relief.

Dated: February 26, 2025

**BRYAN CAVE LEIGHTON PAISNER LLP**

By /s/ *Kyle S. Hirsch*
    Kyle S. Hirsch
    Texas Bar No. 24117262
    Justin D. Hanna
    Texas Bar No. 24095726
    The Dallas Arts Tower
    2200 Ross Avenue, Suite 4200W
    Dallas, Texas 75201
    Telephone: (214) 721-8000
    Facsimile: (214) 721-8100
    Email: kyle.hirsch@bclplaw.com
           justin.hanna@bclplaw.com

**Attorneys for Receiver Alan Weiner of Focus Management Group**

## **CERTIFICATE OF SERVICE**

  I certify that on February 26, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

  I further certify that a true and correct copy of the foregoing has been served on all parties' counsel of record as follows.

> Josh Lesser
> jlesser@bradley.com
> N. Christian Glenos
> cglenos@bradley.com
> **Counsel to Cadence Bank**
>
> Matthew B. Probus
> matthewprobus@theprobuslawfirm.com
> **Counsel to Steve Ragiel and TRITgen, LLC**

In addition, a copy of the foregoing has been provided to the following:

> James Phillips
> jphillips@bakerlaw.com
> **Counsel to NOLA Transportation, Inc. and**
> **NOLA Construction & Development Group, LLC**
>
> Kit F. Pettit
> kpettit@bernsteinlaw.com
> **Counsel to Bluyello LLC**
>
> Robert Richards
> Clay Taylor
> robert.richards@dentons.com
> clay.taylor@dentons.com
> **Counsel to Closed Loop Fund LP**
>
> Jeff Carruth
> jcarruth@wkpz.com
> **Counsel to the Gasmer Lease lessor**
>
> Robert Kruckemeyer
> bob@kruckemeyerlaw.com
> Michael Kruckemeyer
> mike@kruckemeyerlaw.com
> **Counsel to Amegy Bank**

11

Jarrod B. Martin
Amy C. Moss
Jarod.martin@chamberlainlaw.com
Amy.moss@chamberlainlaw.com
**Former Counsel to Independent Texas Recyclers, LLC**

                    */s/ Lisa Remus*