## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CADENCE BANK, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| V. | § | Civil Action No.: 4:24-cv-01266 |
| | § | |
| TRITGEN, LLC and INDEPENDENT | § | |
| TEXAS RECYCLERS, LLC, | § | |
| | § | |
| *Defendants.* | § | |

**DECLARATION OF ALAN L. WEINER IN SUPPORT OF RECEIVER'S <u>SECOND</u> MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING THE RECEIVER'S ENTRY INTO AND PERFORMANCE UNDER THE ASSET PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

I, Alan L. Weiner, hereby declare under penalty of perjury, to the best of my knowledge and belief, as follows:

1.      I submit this Declaration (the "Declaration") in support of the relief requested in the Receiver's <u>Second</u> Motion for Entry of Order: (I) Authorizing the Sale of the Assets Free and Clear of All Liens, Claims, and Encumbrances; (II) Authorizing and Approving the Receiver's Entry Into and Performance Under the Asset Purchase Agreement; and (III) Granting Related Relief (the "Second Sale Motion").  Capitalized terms not otherwise defined in this Declaration shall have the meaning given in the Second Sale Motion.

2.      All facts set forth in this Declaration are based upon my personal knowledge; my discussions with professionals retained in this case; my review of relevant documents and information concerning the operations and financial affairs of Independent Texas Recyclers, LLC ("ITR"); and my opinion based upon my experience and knowledge of ITR's industry, operations, and financial condition. If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

1

3.    I am a Senior Managing Director at Focus Management Group ("Focus") with over 30 years' experience as a senior workout executive, investment banker, and senior executive.    I have significant experience in providing management leadership to a variety of companies and have considerable experience in managing complex cases and quickly assessing strategic alternatives, including sales transactions. I hold an MBA with a concentration in Finance from the Wharton School at the University of Pennsylvania and a BS with High Honors in Computer and Information Sciences from the University of Florida.

4.    Pursuant to the Receivership Order, I was authorized to market the receivership assets for sale. Upon assuming control over and overtaking operations of the ITR business on or about April 15, 2024, with the consent of petitioning creditor Cadence Bank ("Cadence"), I explored options for maximizing creditor recovery including, among other things, selling the ITR business as a going concern.

5.    My efforts to market and solicit buyers is described in paragraphs 5-13 of the declaration I submitted in support of the first motion to approve a sale (such motion, the "First Sale Motion," was filed on October 11, 2024, at ECF No. 39; and the supporting declaration, as supplemented at ECF No. 46, the "First Declaration," was attached to the First Sale Motion).    I incorporate by this express reference those paragraphs as if fully set forth herein.

6.    The sale process I had pursued afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets. The sale process was implemented in good faith, was substantively and procedurally fair to all potential buyers, and involved customary procedures used in competitive sales. I am not aware of any facts to suggest that any party involved in the sale process conducted itself in bad faith, or engaged in any fraud or collusion in connection with the sale process.

7.    Notwithstanding my efforts, the sale transaction I had negotiated and that the Court approved failed to close and was terminated.    I therefore discontinued the Company's business operations and took appropriate steps to proceed with a liquidation of the assets of the Receivership

2

Estate and wind-down of the receivership.  However, I continued to investigate potential sale opportunities.

8.      I have since encountered a new sale opportunity, as described in the Asset Purchase Agreement (the "Second APA), a true and correct copy of which is attached to the Second Sale Motion as Exhibit 1.  The proposed purchaser (the "Second Purchaser") intends to acquire the Purchased Assets in connection with operating a similar type of business as the business of the Company.  The Second APA is the result of good faith, arms' length negotiations, and reflects a sale transaction that I believe will provide the Receivership Estate with maximum value for its assets.

9.      The Second APA is presently the highest and otherwise best offer for the Purchased Assets. Indeed, it is the only pending, actionable offer, notwithstanding that the sale proceeds will not even be sufficient to repay the outstanding balance owed to Cadence let alone to other estate creditors.  In the event the Second APA is not approved by the Court, or the Second Transaction does not close, the only available alternative will be to liquidate the assets through a process that has already commenced (and is expected to conclude in early April 2025). The Second Purchaser has paid a non-refundable deposit that should be sufficient to pay the expenses incurred preparing for the liquidation auction, which will proceed concurrently while I seek Court approval of the Second APA and seek to close the Second Transaction.

10.      In my professional judgment, for the reasons summarized herein and upon which I can elaborate if called to testify, I submit that the Second Transaction maximizes the value of the Receivership Estate.

11.      I believe that the Second Purchaser and I have acted in good faith in connection with negotiating and entering into the Second APA, and all other aspects of the marketing and sale process conducted by myself with the assistance of Focus and my other professionals.

12.      It is my understanding that under the circumstances, the Second Purchaser is only willing to proceed with the Second Transaction if the Purchased Assets are sold free and clear of

liens, claims, and interests in accordance with the terms of the Second APA and the proposed order being submitted with the Second Sale Motion.

13.    The Receiver has operated the ITR business, implementing various cost-savings measures with an additional $300,000 in financing provided by Cadence.  Under the Receiver's operational control, and with the exception of legal and professional fees associated with the receivership, the ITR business effectively ran operationally at a break-even pace, despite several setbacks including Hurricane Beryl that impaired operations for several days in July 2024. However, in my business judgment and because Cadence had declined to further fund the expenses of the receivership estate except from asset disposition proceeds (e.g., auction sale proceeds or proceeds of the Second Transaction), an acquisition by a strategic buyer consistent with the relief requested in the Second Sale Motion is in the best interests of the Receivership Estate, creditors and other stakeholders and should be granted in all respects.

14.    Regardless of the outcome of the Second Sale Motion and closing of the Second Transaction, I expect to promptly liquidate and/or abandon all remaining Receivership Estate assets once the Second Sale Motion is resolved and the Second Transaction either closes or terminates.

15.    Timing of approval of the Second Sale Motion is critical.  I believe that any delay in closing the Second Transaction may result in a lower recovery to the Receivership Estate and ultimately place the Second Transaction in jeopardy by allowing the Second Purchaser to terminate the Second APA.  I expect a liquidation will generate fewer dollars available to pay administrative expenses and creditor payments than the sale proceeds under the Second Transaction.  Accordingly, approving the Second Sale Motion on an expedited basis will present the best opportunity for (i) payment of Receivership Estate administrative expenses and (ii) any return to creditors.

16.    Because the timing of closing of the Second Transaction is of critical importance, the Second Sale Motion does not seek authorization to distribute the proceeds of the Second Transaction except to pay (i) customary closing costs; (ii) the fees incurred by the Court-approved liquidator, PPL; and (iii) any deposit refund in the event of a successful close to a third party

competing bidder pursuant to Section 12 of the Second APA. Rather, once the Second Transaction has closed and I have received the net sale proceeds, I intend to apply to the Court for an order distributing the remaining Second Transaction proceeds along with my final report and request for my discharge.

17.    For all of the reasons set forth herein, I believe that it is a reasonable exercise of my business judgment to enter into the Second APA with Second Purchaser and close the Second Transaction. In addition, I believe that it is in the best interest of the Receivership Estate, its creditors and all other parties in interest to close the Transaction as quickly as practicable.

[*Signature Page Follows*]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 26th day of February, 2025.

_____
Alan L. Weiner