# EXHIBIT 1

EXECUTION VERSION

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**") is made as of this ⟨35⟩ day of February, 2025, by and between BT Recycle, a Delaware limited liability company ("**Purchaser**"), and Alan Weiner, as receiver of the Receivership Property ("**Seller**" or "**Receiver**") in the civil action styled *Cadence Bank v. TRITgen, LLC and Independent Texas Recyclers, LLC*, Civil Action Number 4:24-cv-01266 (the "**Receivership Action**") in the United States District Court for the Southern District of Texas, Houston Division (the "**District Court**"),with each of Purchaser and Seller referred to singly as a "**Party**" and together collectively referred to as the " **Parties**".

### RECITALS

A.      Independent Texas Recyclers, LLC, a Delaware limited liability company (the "**Company**") owns and operates certain assets associated with the recycling of plastics, cardboard, paper, aluminum cans, glass and other materials (the "**Business**").

B.      Receiver is the court-appointed receiver for the Business, property, and all other assets (the "**Receivership Property**") of the Company. On April 15, 2024, the District Court entered the *Agreed Order Appointing Receiver* (the "**Receivership Order**") authorizing Receiver to sell the Receivership Estate (as defined in the Receivership Order).

C.      The obligations of the Company under the Loan Documents (as defined in the Receivership Order) are secured by a perfected, first-priority lien and security interest in favor of Cadence Bank, a Mississippi banking corporation ("**Cadence**"), covering substantially all of the Company's assets (the "**Senior Lien**").

D.      Receiver has agreed to sell the Purchased Assets (as such term is defined in <u>Exhibit A</u> hereto and being substantially all of the operational assets of the Company) to Purchaser and Purchaser has agreed to purchase the Purchased Assets for the consideration identified herein and otherwise on the terms and subject to the conditions set forth herein.

### AGREEMENT

1.      <u>Agreement Conditional upon Confirmation by the District Court</u>. The closing (the "**Closing**") of the transactions contemplated by this Agreement and the other Transaction Documents (collectively, the "**Transaction**") is conditioned upon the entry of an Order of the District Court (the "**Sale Order**") approving this Agreement, authorizing and confirming the Transaction, and vesting in and to Purchaser all of the Company's right, title and interest in and to the Purchased Assets, free and clear of any and all security interest, lien, claim, charge, reservation of ownership, pledge, encumbrance, mortgage, adverse claim or right of Cadence and/or any other Person (as hereinafter defined), including any lenders and creditors (collectively, "**Liens and Claims**").

2.      <u>Purchase and Sale; Limitation of Warranty and Damages</u>. On the terms and subject to the conditions of this Agreement, Purchaser agrees to buy from Seller and Seller agrees to sell to Purchaser, all of the Purchased Assets, but excluding for certainty the Excluded Assets (as defined below). Subject to the terms and conditions of this Agreement, including the receipt of the Sale Order, ownership of the Purchased Assets will be conveyed to Purchaser at the Closing, free and clear of any Liens and Claims. Except as provided in this Agreement, all Purchased Assets are conveyed "AS IS" "WHERE IS" "WITH ALL FAULTS" "WITH ALL DEFECTS" and "WITHOUT RECOURSE." Except as provided in this Agreement, no other express or implied warranties are made with respect to the Purchased Assets. Except to the extent arising from Seller's breach of this Agreement, Seller is not liable for any other damages



1

EXECUTION VERSION

arising out of this Agreement whatsoever. Upon consummation of the Closing, Purchaser shall be deemed to have acknowledged that it has had adequate opportunity to make any inspections of the Purchased Assets, and upon consummation of the Closing, Purchaser shall be deemed to have accepted the condition of the Purchased Assets. Except as otherwise specifically provided in this Agreement, Purchaser's sole remedy for breach of this Agreement is to seek recission of this Agreement in District Court.

3.    <u>Excluded Assets</u>. Seller and Purchaser expressly understand and agree that Purchaser is purchasing and acquiring, and Seller is selling and assigning, any and all assets and properties of Seller, including, but not limited to, those assets identified on <u>Exhibit A</u>, but excluding (and only excluding) the Excluded Assets listed in <u>Exhibit B</u>, which are and shall be excluded from the Purchased Assets (collectively, the "**Excluded Assets**"). Purchaser is not purchasing or acquiring any assets of or from any affiliate of Seller.

4.    <u>Excluded Liabilities</u>. Other than the liabilities associated with the Assumed Contracts (as that term is defined in <u>Exhibit A</u>) but only to the extent that such liabilities and obligations are required to be performed after the Closing Date and relate to actions or omissions occurring after the Closing Date which first arose after the Closing Date (the "**Assumed Contract Liabilities**"), Purchaser shall not, by the execution and performance of this Agreement or otherwise (including under theories of successor liability), have any obligation whatsoever, and hereby expressly disclaims any obligation, to assume, pay, satisfy, discharge, perform or fulfill and shall not be liable or incur, directly or indirectly, or otherwise responsible for or incur any debts, liabilities or other obligations or claims of any nature or kind, whether legal or equitable, or matured or contingent (including any cross-claim or counterclaim), actions, demands, investigations, choses in or cause of action, suits, defaults, assessments, litigation, third party actions, arbitral proceedings or proceedings by or before any individual, partnership, firm, corporation, limited liability company, association, trust, unincorporated organization, governmental authority or other entity (collectively, a "**Person**") of the Company, the Business, or Seller (collectively, "**Liabilities**").

Seller agrees that the Liabilities are the liability of the Seller and not the Purchaser. For the avoidance of doubt, Purchaser assumes no Liabilities other than the Assumed Contract Liabilities, and any and all other Liabilities shall be retained by Seller. Purchaser hereby waives and releases Seller and the receivership estate from any and all claims, actions, obligations and/or liabilities in connection with or related to the Assumed Contract Liabilities, and, further, Purchaser hereby indemnifies and holds Seller, the receivership assets and the receivership estate harmless in connection with all Assumed Contract Liabilities.

5.    <u>Purchase Price</u>.

(a)    The aggregate purchase price for the Purchased Assets is $1,350,000, plus an amount equal to the Gasmer Post-Close Rent Payments (as defined in Section 8(h) below) (the "**Purchase Price**"). A deposit of $150,000 (the "**Deposit**") has already been paid to Receiver.  At the Closing, Purchaser shall pay the balance of the Purchase Price ($1,200,000 plus the Gasmer Post-Close Rent Payments) to Receiver.  Payment of the Deposit and of the balance of the Purchase Price shall be by wire transfer of immediately available funds to an account designated in writing by Receiver.

(b)    Purchaser and Seller shall allocate the Purchase Price among the Purchased Assets in accordance with the applicable provisions of the U.S. Internal Revenue Code as determined by Purchaser in good faith and delivered to Seller within sixty (60) days of the Closing.

(c)    All payments made by the Purchaser to Seller shall be nonrefundable.

6.    <u>Closing Deliverables</u>.



EXECUTION VERSION

(a)      Seller Closing Deliverables. At the Closing, Seller shall deliver or cause to be delivered to Purchaser:

(i)      a bill of sale, in the form attached hereto as Exhibit D (the "**Bill of Sale**"), duly executed by Seller;

(ii)      an assignment and assumption agreement, in the form attached hereto as Exhibit E (the "**Assignment and Assumption Agreement**"), duly executed by Seller;

(iii)      an assignment and assumption of that certain lease for the premises located at 6810 Irvington Boulevard, Houston, TX 77022 (the "**Irvington Property**") (the "**Irvington Property Lease**") executed by Seller, effective as of the Closing Date in form and substance acceptable to Purchaser (the "**Assignment and Assumption of the Irvington Property Lease**");

(iv)      a properly executed and completed Internal Revenue Service Form W-9 from Seller;

(v)      such deeds, bills of sale, endorsements, consents, assignments and other good and sufficient instruments of conveyance and assignment as the Parties and their respective counsel shall deem reasonably necessary or appropriate to vest in Purchaser all right, title and interest in, to and under the Purchased Assets and to evidence Purchaser's assumption of the Assumed Contract Liabilities in accordance with the terms hereof, in each case duly executed by Seller; and

(vi)      such other documents and instruments as Purchaser may reasonably request to consummate the Transaction.

(b)      Purchaser Closing Deliverables. At the Closing, Purchaser shall deliver or cause to be delivered to Seller:

(i)      the Purchase Price;

(ii)      the Bill of Sale, duly executed by Purchaser;

(iii)      the Assignment and Assumption Agreement, duly executed by Purchaser;

(iv)      a counterpart to the Assignment and Assumption of the Irvington Property Lease, effective as of the Closing Date and duly executed by Purchaser;

(v)      the resolutions from the manager and members of Purchaser authorizing the execution, delivery and performance of this Agreement and the other agreements, documents, instruments, exhibits, schedules or certificates required to be delivered under this Agreement (collectively, the "**Transaction Documents**") and the consummation of the transactions contemplated hereby and thereby; and

(vi)      such other documents and instruments as Seller may reasonably request to consummate the Transaction.



EXECUTION VERSION

7.    <u>Representations and Warranties of Purchaser</u>. Purchaser represents and warrants to Seller as of the date of this Agreement and as of the Closing, as follows:

(a)    Organization; Authority. Purchaser is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Delaware. Purchaser has all requisite corporate power and authority to execute this Agreement and the other Transaction Documents to which it is or will be a party, to perform its obligations hereunder and thereunder, and to consummate the Transaction.

(b)    Authorization; Binding Obligations. The execution and delivery by Purchaser of this Agreement and the other Transaction Documents to which it is or will be a party, the performance by Purchaser of its obligations hereunder and thereunder, and the consummation of the Transaction have been duly approved by all requisite action on the part of Purchaser. This Agreement and the other Transaction Documents to which Purchaser is or will be a party, upon their execution by Purchaser, constitutes, or will constitute, as the case may be, valid and binding obligations of Purchaser and are enforceable in accordance with their respective terms, subject to any limitation under applicable laws relating to (i) bankruptcy, winding-up, insolvency, arrangement, fraudulent preference and conveyance, assignment and preference and other laws of general application affecting the enforcement of creditors' rights, and (ii) the discretion that a court may exercise in the granting of equitable remedies such as specific performance or injunction.

(c)    No Broker. Purchaser has no liability or obligation to pay any fees or commissions to any broker, finder or agent with respect to the Transaction for which Seller could become liable or obligated.

(d)    Non-Circumvention. The execution, delivery and performance by Purchaser of this Agreement and the other Transaction Documents to which it is or will be a party and any other documents and instruments to be executed and delivered by Purchaser pursuant hereto and thereto, and the consummation of the Transaction, do not and will not (i) violate any statute, regulation, rule, injunction, judgment, order, decree, ruling, charge, or other restriction of any government, governmental agency, or court to which Purchaser is subject or (ii) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, or cancel, or require any notice under, any agreement, contract, lease, license, instrument, or other arrangement to which Purchaser is a party or to which it is bound or to which any of its material assets is subject, including without limitation the certificate of formation and limited liability company agreement of Purchaser.

(e)    Independent Investigation; Acknowledgement. Purchaser has had an opportunity to discuss the condition of the Purchased Assets with Seller's officers, employees, agents, and representatives. Purchaser has conducted its own independent investigation of the Purchased Assets. In making its decision to execute and deliver this Agreement and to consummate the Transaction, Purchaser acknowledges that the representations and warranties set forth in <u>Section 2</u> are the only representations and warranties made by Seller, and that Purchaser has not relied upon any other information provided by, for or on behalf of Seller, or its agents or representatives, to Purchaser or any of its agents or representatives in connection with the negotiation, execution or delivery of this Agreement. Purchaser has entered into this Agreement with the understanding, acknowledgement and agreement that no representations or warranties, express or implied, are made with respect to any of the Purchased Assets. Purchaser acknowledges that no current or former agent, representative, affiliate or advisor of Seller has made or is making any representations, warranties or commitments whatsoever regarding the subject matter of this Agreement, express or implied.



8.    Covenants.

(a)  Receivership Action. As promptly as practicable after execution of this Agreement, Seller shall (i) file a motion for the issuance of the Sale Order; and (ii) serve such parties as the District Court or Purchaser requires for the motion seeking the issuance of the Sale Order.

(b)    Notices and Consents. Seller will use its commercially reasonable efforts to seek and timely obtain any consents or waivers under any contracts by which the Company is bound as necessary to consummate the Transaction; *provided that*, notwithstanding anything in this Agreement to the contrary, in no event shall Seller be obligated to pay any amounts to or for any third party in connection therewith.

(c)    Preservation of the Purchased Assets. From the date of this Agreement until the Closing, and except as otherwise consented to or approved in advance in writing by Purchaser or as may be limited or modified as a result of the Receivership Action, Seller covenants and agrees with Purchaser that Seller will, and will cause the Company to, use, preserve and maintain the Purchased Assets in a manner consistent with past practice, as the Purchased Assets are on the date of this Agreement, ordinary wear and tear and damage by casualty.

(d)    Full Access. Purchaser and its representatives in connection with the Transaction shall have reasonable access during normal business hours to inspect the Purchased Assets, including access to all contracts and other documentation relating to the Purchased Assets in unredacted form.

(e)    Further Assurances. Each Party will take all reasonably necessary steps to carry out the intent of this Agreement, including, but not limited to, executing and delivering, or causing to be executed and delivered, such further instruments or documents as reasonably requested by the other Party.

(f)    Transfer Taxes. All sales, use, registration, and other such Taxes and fees (including any penalties and interest) incurred in connection with this Agreement or any other Transaction Document, if any, shall be borne and paid equally by Seller and Purchaser when due. Seller shall, at its own expense, timely file any return, declaration, report, estimates, voluntary disclosure agreements, claim for refund, or information return or statement filed or required by law to be filed in connection with such Taxes or fees (and Purchaser shall cooperate with respect thereto as necessary).

(g)    Employees. Seller shall, through the Closing Date, use its reasonable best efforts to assist Purchaser with its effort to employ those employees of the Company which Purchaser has offered employment to, if any.

(h)    Gasmer Location Rent. Seller shall continue to pay rent (the "**Gasmer Post-Close Rent Payments**") and comply with all obligations pursuant to the Seller's real property lease agreement for the premises located at 4711 Gasmer Road, Houston, Texas 77022 (the "**Gasmer Property**") until the end of the month following ninety (90) days after the Closing, and shall permit Purchaser reasonable access to the Gasmer Property during such period in order to remove any Purchased Assets.

9.    Conditions to Closing.

(a)    Conditions to Obligations of Seller. The obligations of Seller to consummate the Transaction shall be subject to the satisfaction, or Seller's waiver, at or prior to the Closing, of each of the following conditions:

(i)    The representations and warranties of Purchaser contained in this Agreement shall be true and correct in all material respects on and as of the Closing Date (other than representations and warranties that are made only as of the date hereof or any other specified



EXECUTION VERSION

date, which shall be true and correct as of such date).

(ii)      Purchaser shall have performed or complied in all material respects with all obligations, agreements and covenants required under this Agreement and the other Transaction Documents to be performed or complied with by it on or before the Closing Date (except for such obligations, agreements and covenants that by their nature may only be performed at the Closing, but subject to the performance of such obligations, covenants and agreements).

(iii)     Purchaser shall have delivered to Seller a certificate, dated as of the Closing Date and executed by a duly authorized officer of Purchaser, certifying that the conditions set forth in Sections 9(a)(i) and 9(a)(ii) have been satisfied.

(iv)     Purchaser shall have delivered, or caused to be delivered, all closing deliverables contemplated by Section 6(b).

(v)      Satisfaction or waiver of the obligations of the parties contemplated by Section 9(c).

(b)      Conditions to Obligations of Purchaser. The obligations of Purchaser to consummate the Transaction shall be subject to the satisfaction, or Purchaser's waiver, at or prior to the Closing, of each of the following conditions:

(i)      Seller shall have entered into and performed or complied in all material respects with all obligations, agreements and covenants required under this Agreement and the other Transaction Documents to be performed or complied with by it on or before the Closing Date (except for such obligations, agreements and covenants that by their nature may only be performed at the Closing, but subject to the performance of such obligations, covenants and agreements).

(ii)     Seller shall have delivered to Purchaser a certificate, dated as of the Closing Date, certifying that the condition set forth in Section 9(b)(i) has been satisfied.

(iii)    Seller shall have delivered, or caused to be delivered, all closing deliverables contemplated by Section 6(a).

(iv)     From the date of this Agreement, there shall not have occurred any material adverse effect on the Purchased Assets, nor shall any event or events have occurred that, individually or in the aggregate, could reasonably be expected to result in a material adverse effect on the Purchased Assets.

(v)      Purchaser shall have entered into an agreement, acceptable to Purchaser, with the Irvington Property landlord, relating to the clean-up of the Irvington Property.

(vi)     Satisfaction or waiver of the obligations of the parties contemplated by Section 9(c).

(c)      Conditions Precedent to Obligations of the Parties. The obligations of the Parties to consummate the Transaction are subject to the satisfaction of the following conditions (all or any of which may be waived in writing in whole or in part by the Parties in their discretion, to the extent permitted by Law):

(i)      Approval by the District Court of this Agreement and authorization by

EXECUTION VERSION

the District Court to close the Transaction, upon compliance with the following procedures:

    (A)    Receiver's motion for approval of this Agreement and authorization to close the Transaction and entry of the Sale Order (the "**Motion**") shall be filed and served on all relevant parties in interest who have appeared in the Receivership Action. Prior to the filing and service of the Motion, Purchaser shall have no less than three (3) business days from the date of its receipt of the proposed Sale Order to review and either approve or provide comments to the same. Purchaser's consent to the submission of the Sale Order upon the filing of the Motion shall conclusively establish that the Sale Order is acceptable to Purchaser in form and substance.

    (B)    To the extent necessary in connection with pursuing entry of the Sale Order, Receiver, with cooperation of Purchaser, shall present evidence to the District Court sufficient to support findings of adequate notice, the sufficiency of the consideration paid, fairness to parties and lienholders, and any other matter provided in the Sale Order.

    (C)    Entry of the Sale Order. To the extent the Sale Order modifies or conflicts with any term or provision of this Agreement, the Sale Order shall control. In the event the District Court modifies the Sale Order prior to its entry, and such modification alters the Sale Order in a material way such that it is in any way inconsistent with this Agreement, Purchaser may terminate this Agreement upon written notice delivered to Seller within three (3) business days of entry of such modified Sale Order. Failure to timely provide notice of termination shall constitute acceptance of the modified Sale Order.

    (ii)    No proceeding of any governmental authority or regulatory body of the United States or of any state restraining, enjoining or otherwise preventing or materially delaying the consummation of this Agreement or the Transactions shall be outstanding, and no proceeding or other legal action, whether at law or in equity, or before or by any governmental authority or regulatory body of the United States or of any state, shall be pending or threatened in writing wherein an unfavorable outcome would (A) prevent or enjoin the performance of this Agreement or the consummation of the transactions contemplated hereby or declare unlawful any of the transactions contemplated hereby or (B) cause any of the transactions contemplated hereby to be rescinded following consummation.

10.    <u>Closing</u>.

    (a)    The Closing shall occur within three (3) business days after the satisfaction or waiver in writing of all closing conditions set out in <u>Section 9</u> (the "**Closing Date**"). Each of the Parties agree to take all such actions as are within its power to control and shall use its commercially reasonable efforts to cause other actions to be taken which are not within its power to control, so as to permit good title to the Purchased Assets to be duly transferred to Purchaser at the Closing and ensure compliance with all of the conditions set forth in this Agreement.

    (b)    The Closing, when effective, will be deemed to be effective as of 12:00 a.m. on the Closing Date (the "**Effective Time**"), except as otherwise specifically provided at the time of the Closing.

    (c)    Purchaser shall pay all reasonable registration fees associated with the transfer of the Purchased Assets.



    (d)      Upon receipt of the Purchase Price, Receiver shall cause Seller to file a UCC-3 termination statement in form and substance acceptable to Receiver and provided by Purchaser terminating the Senior Lien and any other known Liens and Claims.

    11.    <u>Termination</u>.

    (a)      This Agreement may be terminated at any time prior to the Closing Date by mutual written agreement of Seller and Purchaser.

    (b)      This Agreement may be terminated by the Purchaser if within 30 days of the date of this Agreement the Purchaser presents to the Seller defects discovered during the Purchaser's due diligence process.

    (c)      This Agreement may be terminated prior to the Closing by written notice from either Purchaser or Seller to the other Party, if the Closing has not occurred on or before March 31, 2025 (the "**Outside Date**") or such later date as Purchaser and Seller may mutually agree upon in writing; *provided*, that (i) the right to terminate this Agreement pursuant to this <u>Section 11(c)</u> shall not be available to any Party whose breach of this Agreement has been the primary cause of any condition or conditions not being capable of being satisfied prior to the Outside Date and (ii) if the Closing has not occurred by the Outside Date, but on such date, all of the conditions to Closing set forth in <u>Section 9</u> have been satisfied or waived in writing, other than (A) conditions that by their nature are only to be satisfied as of the Closing, and (B) the condition set forth in <u>Section 9(c)(i)</u>, then the Outside Date shall automatically be extended for an additional thirty (30) days, and if Closing has not occurred within such additional thirty (30) day period, then this Agreement may be terminated by written notice from either Purchaser or Seller to the other Party.

    (d)      This Agreement may be terminated by either Party at any time prior to the Closing Date upon delivery of a written notice to the other Party, in the event that the other Party is in breach of any of its material obligations under this Agreement and such breach is not cured in five (5) business days after written notice from the other Party.

    (e)      Purchaser may terminate this Agreement as set forth in <u>Section 9(c)(i)(C)</u> or as set forth in <u>Section 15(n)</u>.

    12.    <u>Competing Offer and Matching Bid</u>. If Seller is ordered by the Court to evaluate and/or consider other offers, and/or to conduct additional advertising or marketing of the Purchased Assets and then receives a competing offer from any third party in connection therewith ("**Competing Offer**"), then Seller shall, within twenty-four (24) hours of receipt, provide a complete and true copy of the Competing Offer to Purchaser. In the event that Seller determines that a Competing Offer is higher and better than Purchaser's offer (as set forth in this Agreement), Seller shall promptly inform Purchaser. Purchaser shall have the right to match any Competing Offer. Seller and Purchaser agree that the matching bid by Purchaser of any Competing Offer shall be deemed by Seller and Purchaser, but not necessarily the District Court, to be a higher and/or better offer than the Competing Offer. Purchaser acknowledges that any matching bid of Purchaser will be subject to the approval of the District Court. In the event the District Court deems a Competing Offer as the winning bid for the Purchased Assets: (i) Purchaser's last offer accepted by Seller shall automatically be deemed a back-up bid; (ii) in the event the Competing Offer actually closes, Receiver shall cause Seller to repay the Deposit to Purchaser within three (3) business days of the close of the Competing Offer; and (iii) in the event the Competing Offer fails to close, then Purchaser shall have the right to elect to close on its back-up bid pursuant to the terms of this Agreement (with the Closing Date extended to a date that is no more than fourteen (14) days after the Competing Offer's failed closing date)



EXECUTION VERSION

and the Deposit shall remain non-refundable to Purchaser regardless of whether Purchaser closes on its back-up bid.

13.   <u>Cadence Approval</u>. Prior to the execution and delivery of this Agreement, Seller has delivered a final copy of this Agreement to Cadence for its review and approval and Seller represents to Purchaser that Cadence is satisfied with the terms, conditions and covenants set forth herein (including the termination of the Senior Lien at Closing) and has approved this Agreement for execution by Seller and Purchaser.

14.   <u>Collections Post-Closing</u>.   In the event that Purchaser receives any amounts directly related to any accounts receivable arising from the conduct of the Business prior to the Closing, Purchaser shall promptly remit all such amounts to Seller; provided however, that Purchaser may offset and withhold amounts necessary to satisfy any obligations which Seller has to Purchaser, if any.

15.   <u>Miscellaneous</u>.

(a)   Survival of Agreement. This Agreement, and all terms, warranties and provisions hereof will be true and correct as of the time of the Closing and will survive the Closing until the Receiver is discharged and the Receivership Action is closed.

(b)   Notices. All notices, requests, consents, claims, demands, waivers and other communications under this Agreement (each, a "**Notice**", and with the correlative meaning "**Notify**") must be in writing and addressed to the other Party at its address set forth below (or to such other address that the receiving Party may designate from time to time in accordance with this <u>Section 15(b)</u>. Unless otherwise agreed herein, all Notices must be delivered by personal delivery, nationally recognized overnight courier, or certified or registered mail (in each case, return receipt requested, postage prepaid), or e-mail. Receipt shall be deemed to have occurred upon delivery, in the case of personal delivery or email, and receipt, in the case of courier, or certified or registered mail.

<u>If to Purchaser</u>:

19430 FM 1093
Richmond, TX 77407
Attention: David Fleming
Email: dfleming@besttrashtexas.com

with a copy to (which shall not constitute notice):

Hughes Arrell LLP
2801 Via Fortuna, Ste 440
Austin, TX, 78746
Attention: Mark Hughes
Email: mark@hughesarrell.com

<u>If to Seller</u>:

Alan Weiner, receiver for the Company
6585 N. Avondale Ave.
Chicago, IL 60631
Email: a.weiner@focusmg.com



EXECUTION VERSION

with a copy to (which shall not constitute notice):

Bryan Cave Leighton Paisner LLP
2200 Ross Avenue, 4200W
Dallas, Texas 75201
Attention: Kyle S. Hirsch
Email: kyle.hirsch@bclplaw.com

(c)     Successors and Assigns. This Agreement will be binding upon the Parties hereto and their respective successors, personal representatives, heirs, and assigns. Seller may not assign its rights in this Agreement except that Seller may assign its rights to receive money. Purchaser may not assign any of its rights or obligations under this Agreement except with the prior written consent of Seller. Notwithstanding the foregoing, Purchaser may, by written notice delivered to Seller at or prior to the Closing Date, specifically assign its right to acquire any of the Purchased Assets to be assigned (included each Assigned Contract) to an affiliate of Purchaser, in which case, at the Closing, Seller shall take all such action as necessary to cause such Purchased Asset to be assigned directly from Seller to such designated affiliate of Purchaser.

(d)     Entire Agreement. This Agreement sets forth the entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior negotiations and agreements between the Parties to the extent related to the subject matter hereof. The recitals in this Agreement are incorporated into this Agreement by reference. Each Party represents and warrants that it is not relying on any omissions or any promises, inducements, or representations other than those provided herein, such reliance being expressly disclaimed by each Party to this Agreement.

(e)     Dispute Resolution. The District Court shall retain exclusive jurisdiction to: (i) enforce and implement the terms and provisions of this Agreement, (ii) resolve any disputes, controversies or claims arising out of or relating to this Agreement, (iii) interpret, implement and enforce the provisions of the Sale Order, (iv) protect Purchaser against any Liens and Claims or other Liabilities of whatever nature regarding this Agreement, the Purchased Assets, and the Receivership.

(f)     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without reference to the choice or conflict of law principles (whether of the State of Texas or any other jurisdiction) that would result in the application of the laws of a different jurisdiction.

(g)     Modification or Severance. In the event that any provision of this Agreement is found by the District Court to be illegal or unenforceable, such provision shall be severed or modified to the extent necessary to render it enforceable and so severed or modified, this Agreement will remain in full force and effect unless such modification or severance destroys the benefit of the bargain for either Party.

(h)     Captions. The captions in this Agreement are included for convenience only and shall not in any way affect the interpretation of any of the provisions hereof.

(i)     Counterparts; Email. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which when affixed together shall constitute but one and the same instrument. Signatures exchanged by email or other means of electronic transmission shall be deemed original signatures for all purposes.

(j)     No Representation or Warranty Regarding Tax Consequence. Neither Seller nor Purchaser makes any representations or warranties about the tax consequences or effects of this Agreement or the Transaction to the other Party, and none of the Parties hereto assumes any responsibility therefor or



EXECUTION VERSION

for any particular tax treatment. Except as otherwise provided elsewhere herein, each Party shall be responsible for paying any Taxes owed by them as a result of the terms this Agreement, except as indicated to the contrary herein.

(k)     Written Modification Only. This Agreement (including all exhibits and schedules hereto) may be modified only by a written instrument signed by each of the Parties.

(l)     Meaning of Headings. The headings of the paragraphs of this Agreement have been inserted for reference only and are not part of this Agreement and are not to be used in any way in the construction or interpretation of hereof.

(m)     Fees and Expenses. In the event of litigation to enforce any provision of this Agreement, the Party substantially prevailing in the action shall be entitled to an award of all his, her or its costs and expenses, including reasonable attorneys' fees and expenses.

(n)     Possession of Purchased Assets. Following the Closing, Purchaser shall take possession of the Purchased Assets as of where they are situated at the Closing. Purchaser acknowledges that Seller has no obligation to deliver physical possession of the Purchased Assets to Purchaser. In no event shall the Purchased Assets be sold, assigned, transferred or sent over to Purchaser until the conditions set out in the Sale Order have been satisfied, and Purchaser and Seller have satisfied or waived in writing all delivery requirements described in this Agreement. The Purchased Assets shall be and remain until the Closing at the risk of Seller. In the event of material damage by fire or other hazard to the Purchased Assets or any part thereof occurring before the Effective Time, Seller shall immediately advise Purchaser thereof by notice in writing and Purchaser shall have the right to either (i) complete the Transaction in accordance with the terms hereof without reduction of the Purchase Price and the proceeds of any insurance available or actually paid or payable to Seller shall be paid or assigned, as the case may be, to Purchaser, or (ii) terminate this Agreement. Purchaser shall make its election under subclause (i) or (ii) within ten (10) business days from its receipt of written notice of any such casualty or damage.

(o)     Representation by Counsel. The Parties to this Agreement are represented by counsel and represent that they have had the opportunity to consult with their respective counsel prior to entering into this Agreement. Each Party's respective counsel has participated in the drafting of this Agreement and no clause shall be interpreted in favor of one or another Party under the doctrine of construction against the drafter.

(p)     No Third Party Beneficiaries. This Agreement shall not confer any rights or remedies to any person or entity other than the Parties and their respective successors and permitted assigns.

*[Signature page follows]*



EXECUTION VERSION

    IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of date first written above.

**SELLER**:

_____

Alan Weiner, not in his individual capacity, but solely in his capacity as Receiver of Independent Texas Recyclers, LLC as described above

**PURCHASER**:

BT Recycle, LLC
a Delaware limited liability company

By: _____
Name: DAVID FLEMING
Title: CFO

[*Signature Page to Asset Purchase Agreement*]

**EXECUTION VERSION**

EXHIBIT LIST

| | |
|---|---|
| Exhibit A | Purchased Assets |
| Exhibit B | Excluded Assets |
| Exhibit C | Assigned Contracts |
| Exhibit D | Bill of Sale |
| Exhibit E | Assignment and Assumption Agreement |

EXECUTION VERSION

**EXHIBIT A**
**PURCHASED ASSETS**

For purposes of the Agreement, "**Purchased Assets**" shall mean all tangible assets owned by the Company and used in the operation of the Business, wherever located, excluding the Excluded Assets. "**Purchased Assets**" includes, without limitation:

(a)    With the exception of the 2021 Omron 800-P30 Single Robot, all tangible assets and property of every kind, nature and description, including all leasehold improvements, fixtures, furniture, equipment (including office equipment), tools, machinery, computers, electronic devices, apparatus and other personal property and/or fixed assets used or held for use in the operation of the Business and owned by the Company;

(b)    all inventory, including raw materials, work-in-progress, finished goods, spare parts, tires, fuel, accessories and supplies held or used in connection with the Business and owned by the Company;

(c)    the Company's rights under the lease agreements, contracts and purchase orders listed on Exhibit C (collectively, the "**Assigned Contracts**");

(d)    all rights and claims against third parties of any kind relating to the tangible assets used in the operation of the Business and owned by the Company, including third party warranties, manufacturers warranties, representations, indemnities and guaranties;

(e)    all insurance proceeds for claims under existing insurance policies of the Company for damage to the tangible assets used in the operation of the Business and owned by the Company arising between the date of the Agreement and the Closing;

(f)    to the extent assignable, all licenses, permits, authorizations and certifications of the Business to the extent owned by or licensed to the Company; and

(g)    all hardware and software necessary for the operation of the Business, to the extent owned by or licensed to the Company

EXECUTION VERSION

## EXHIBIT B
## EXCLUDED ASSETS

Notwithstanding anything to the contrary contained herein, the following assets of Seller, the Company, or their affiliates shall be considered "**Excluded Assets**" for purposes of the Agreement:

       (a)     all cash, bank accounts, investment accounts and cash equivalents;

       (b)     all files, documents, instruments, papers, books and records (whether stored or maintained in hard copy, digital or electronic format or otherwise), including tax and accounting books and records, used or intended for use by the Company, in connection with the operation of the Business, including customer information and account records, sales records, invoices, service request documents, computer files, data processing records, employment and personnel records, sales literature, advertising and marketing data and records, credit records, records relating to suppliers and other data;

       (c)     the minute books and corporate records of the Company and its subsidiaries;

       (d)     all domain names, websites, email accounts, logos, telephone numbers, trademarks, service marks, trade names, engineering designs, and other intellectual property rights owned or licensed by the Company and used for the operation or conduct of the Business;

       (e)     except to the extent assignable, all licenses, permits, authorizations and certifications of the Business;

       (f)     all intangible assets, including any shareholdings or rights in any joint venture or other person;

       (g)     except to the extent assignable, all rights and claims against third parties of any kind, including third party warranties, manufacturers warranties, representations, indemnities and guaranties;

       (h)     all accounts and notes receivable;

       (i)     all leased machinery and equipment (including leased vehicles) unless the same is assignable and the associated lease agreement is an Assigned Contract;

       (j)     all insurance proceeds for claims under existing insurance policies of the Company arising before the date of the Agreement;

       (k)     all refunds for unearned and/or unexpired premiums for property, casualty, workers' compensation and all other insurance policies of the Company;

       (l)     all assets held by or on behalf of Seller or the Company, in trust, reserve or otherwise, in respect of any employee benefit plan or other obligations to or on behalf of any employees of Seller or the Company on account of the period prior to the Closing;

       (m)     all contracts or other agreements of any kind (oral or written), including any employee plans, other than the Assigned Contracts;

       (n)     all tax refunds for any tax period prior to and as of the Closing;



EXECUTION VERSION

       (o)      all cash, bank accounts, investment accounts and cash equivalents serving as collateral for any statutory or indemnity obligation of the Company or its affiliates, including but not limited to cash pledged to secure any letters of credit or bonds issued for the benefit of the Company or any of its affiliates;

       (p)      all deposits held by any contract counterparty that is not an Assigned Contract;

       (q)      all of the Company's right, title and interest at the Closing in, to and under all other intangible assets currently used or intended for use in the Business and owned or leased by the Company; and

       (r)      the 2021 Omron 800-P30 Single Robot.

EXECUTION VERSION

## EXHIBIT C
### ASSIGNED CONTRACTS

1.      Three (3) capital leases associated with the four (4) Hyundai forklifts.

2.      Lease for the 2019 544LX Wheel Loader with Bucket.

3.      Irvington Lease.



**Execution Version**

## EXHIBIT D
### BILL OF SALE

(*Attached*)

616530953

## <u>BILL OF SALE AND ASSIGNMENT</u>

This Bill of Sale and Assignment (this "**Bill of Sale**"), dated as of [●], 2025, is from Alan L. Weiner, as receiver in the civil action styled *Cadence Bank v. TRITgen, LLC and Independent Texas Recyclers, LLC*, Civil Action Number 4:24-cv-01266 in the United States District Court for the Southern District of Texas, Houston Division ("**Seller**"), to BT Recycle, LLC, a Delaware limited liability company ("**Purchaser**"). Purchaser and Seller are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**".

### RECITALS

WHEREAS, reference is made to that certain Asset Purchase Agreement, dated as of [●], 2025, by and between Purchaser and Seller (the "**Purchase Agreement**"), pursuant to which the Seller has agreed to sell to the Purchaser and the Purchaser has agreed to purchase from the Seller, the Purchased Assets;

WHEREAS, pursuant to the Purchase Agreement, the execution and delivery of this Bill of Sale by the Seller is a condition to the obligations of the Purchaser to consummate the Transaction; and

WHEREAS, capitalized terms used but not otherwise defined herein shall have the meanings for such terms as set forth in the Purchase Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the promises and mutual agreements set forth in the Purchase Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Seller, intending to be legally bound, hereby agrees as follows:

1.    <u>Sale and Assignment of the Purchased Assets</u>. Seller hereby sells, conveys, assigns, transfers, grants, bargains, sets over, releases, delivers, vests and confirms unto Purchaser and its successors and assigns, forever, free and clear of any Liens and Claims of Cadence, all of Seller's right, title and interest in and to the Purchased Assets. Purchaser hereby purchases, acquires and accepts the Purchased Assets.

2.    <u>Obligations and Liabilities Not Assumed</u>. Nothing expressed or implied in this Bill of Sale shall be deemed to be an assumption by Purchaser of any debts, liabilities and obligations of Seller, the Company or the Business. Purchaser, by this Bill of Sale, does not accept, assume or agree to pay, perform or discharge any debts, liabilities and obligations of Seller, the Company or the Business of any nature, kind or description whatsoever, <u>provided</u>, <u>however</u>, for greater clarity, it is acknowledged by Purchaser that there are certain Assumed Contract Liabilities with respect to the Purchased Assets which are assumed by Purchaser under the Purchase Agreement and other Transaction Documents.

3. <u>Purchase Agreement</u>. Seller and Purchaser each hereby acknowledge and agree that:

(a)    the terms and provisions of the Purchase Agreement shall apply to this Bill of Sale, and the terms and conditions of this Bill of Sale shall be construed consistently therewith;

(b)    this Bill of Sale is subject to the terms and conditions of the Purchase Agreement and in the event that any provision of this Bill of Sale is construed to conflict with a provision in the Purchase Agreement, the provision in the Purchase Agreement shall be deemed to govern and be controlling; and



EXECUTION VERSION

(c)    the representations, warranties, covenants and agreements under the Purchase Agreement shall not be deemed to have been enlarged, reduced, superseded or altered in any way by this Bill of Sale, and this Bill of Sale does not, and shall not, enlarge any rights of third parties with respect to any of the Purchased Assets.

4.    <u>Further Assurances</u>. Seller hereby covenants and agrees that, at any time and from time to time after the Closing, at Purchaser's reasonable request, Seller will, at Seller's expense, do, execute, acknowledge and deliver, or will cause to be done, executed, acknowledged and delivered, any and all further acts, conveyances, transfers, assignments, and assurances as necessary to grant, sell, convey, assign, transfer, set over and deliver, and vest in Purchaser title to, the Purchased Assets, or any of them.

5.    <u>Power of Attorney</u>.  Without limiting <u>Section 4</u> hereof, Seller hereby constitutes and appoints Purchaser, its successors and assigns, the true and lawful attorney and attorneys of Seller, with full power of substitution, in the name of Seller or in the name and stead of Seller, but on behalf of and for the benefit of Purchaser, its successors and assigns:

(a)    to collect, demand and receive any and all Purchased Assets transferred hereunder and to give receipts and releases for and in respect of the same;

(b)    to institute and prosecute in Purchaser's name, or otherwise, at the expense and for the benefit of Purchaser, any and all actions, suits or proceedings, at law, in equity or otherwise, which Purchaser may deem proper in order to collect, assert or enforce any claim, right or title of any kind in or to the Purchased Assets hereby sold and assigned to Purchaser or intended so to be, to defend or compromise any and all such actions, suits or proceedings in respect of any of such Purchased Assets, and to do all such acts and things in relation thereto as Purchaser shall deem advisable for the collection or reduction to possession of any of such Purchased Assets;

(c)    to take any and all other reasonable action designed to vest more fully in Purchaser the Purchased Assets hereby sold and assigned to Purchaser or intended so to be and in order to provide for Purchaser the benefit, use, enjoyment and possession of such Purchased Assets; and

(d)    to do all reasonable acts and things in relation to the Purchased Assets sold and assigned hereunder.

Seller acknowledges that the foregoing powers are coupled with an interest and shall be irrevocable by it or upon it no longer being the court appointed receiver in the Civil Action described in the preamble to this Agreement or in any manner or for any reason. Purchaser shall be entitled to retain for its own account any amounts collected pursuant to the foregoing powers, including any amounts payable as interest with respect thereto. Seller shall from time to time pay to Purchaser, when received, any amounts that shall be received directly or indirectly by Seller (including amounts received as interest) in respect of any Purchased Assets sold, assigned or transferred to Purchaser pursuant hereto.

6.    <u>No Third Party Beneficiaries</u>. This Bill of Sale shall inure solely to the benefit of Purchaser and its successors and assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person, any legal or equitable right, benefit or remedy of any nature whatsoever.

7.    <u>Severability</u>. If any provision of this Bill of Sale or the application thereof to any Person or circumstance becomes or is declared by a court of competent jurisdiction to be invalid, illegal, or incapable of being enforced, the remainder of this Bill of Sale will continue in full force and effect and the application of such provision to other Persons or circumstances will be interpreted so as reasonably to effect the intent of the Parties hereto. The Parties further agree to replace such invalid, illegal, or unenforceable



20

EXECUTION VERSION

provision of this Bill of Sale with a valid, legal, and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of such void or unenforceable provision.

8.  <u>Governing Law</u>. This Bill of Sale shall in all respects be construed in accordance with and governed by the substantive laws of the State of Texas without reference to its conflicts of law rules.

9.  <u>Notices</u>. Any notice, request, instruction or other document to be given hereunder by either Party hereto to the other Party shall be made in accordance with the Purchase Agreement.

10. <u>Effective Date</u>. This Bill of Sale shall be deemed effective for all purposes at the Closing.

*[Remainder of page left intentionally blank; signature page follows]*



21

EXECUTION VERSION

IN WITNESS WHEREOF, this Bill of Sale has been executed by Seller as of the date first above written.

SELLER:

_____

Alan L. Weiner, not in his individual capacity, but solely in his capacity as Receiver of Independent Texas Recyclers, LLC as described above

EXECUTION VERSION

## EXHIBIT E
### ASSIGNMENT AND ASSUMPTION AGREEMENT

*(Attached)*



EXECUTION VERSION

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "**Agreement**"), dated as of [●], 2025, is made and entered into by and between Alan L. Weiner, as receiver in the civil action styled *Cadence Bank v. TRITgen, LLC and Independent Texas Recyclers, LLC*, Civil Action Number 4:24-cv-01266 in the United States District Court for the Southern District of Texas, Houston Division ("**Assignor**"), and BT Recycle, LLC, a Delaware limited liability company ("**Assignee**"). Assignor and Assignee are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**".

### RECITALS

WHEREAS, reference is made to that certain Asset Purchase Agreement, dated as of [●], 2025, by and between Assignor and Assignee (the "**Purchase Agreement**"), pursuant to which, among other things, the Assignor has agreed to assign to the Assignee and the Assignee has agreed to assume from the Assignor the Assumed Contract Liabilities;

WHEREAS, pursuant to the Purchase Agreement, the execution and delivery of this Agreement is a condition to the Parties' obligations to consummate the Transaction; and

WHEREAS, capitalized terms used but not otherwise defined herein shall have the meanings for such terms as set forth in the Purchase Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the promises and mutual agreements and covenants set forth in the Purchase Agreement and hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.    <u>Assignment and Assumption of Assumed Contract Liabilities</u>. Assignor hereby sells, assigns, transfers and conveys to Assignee all of Assignor's right, title, benefit, privileges and interest in and to, and all of Assignor's obligations and liabilities pursuant to, the Assumed Contract Liabilities. Upon the terms and subject to the conditions of the Purchase Agreement, Assignee hereby accepts the assignment of the Assumed Contract Liabilities and hereby assumes and agrees to pay, perform and discharge when due, all of the Assumed Contract Liabilities.

2.    <u>Obligations and Liabilities Not Assumed</u>. Notwithstanding the foregoing paragraph 1, except for the Assumed Contract Liabilities, Assignee does not hereby and will not assume or become liable for and shall not be obligated to pay, perform, discharge or satisfy any obligation, debt or liability of any nature, kind or description whatsoever, whether fixed, contingent, or otherwise, of the Business, the Company or Seller. Nothing expressed or implied in this Agreement is, or shall be deemed to be, an assumption by Assignee or any of its affiliates of any Liabilities, and the Parties agree that all such Liabilities shall remain the sole responsibility and obligation of Seller after Closing, save and except for the Assumed Contract Liabilities.

3.    <u>Purchase Agreement</u>. Assignor and Assignee each hereby acknowledge and agree that:

(a)    the terms and provisions of the Purchase Agreement shall apply to this Agreement, and the terms and conditions of this Agreement shall be construed consistently therewith;

(b)    this Agreement is subject to the terms and conditions of the Purchase Agreement



EXECUTION VERSION

and in the event that any provision of this Agreement is construed to conflict with a provision in the Purchase Agreement, the provision in the Purchase Agreement shall be deemed to govern and be controlling; and

(c)     the representations, warranties, covenants and agreements under the Purchase Agreement shall not be deemed to have been enlarged, reduced, superseded or altered in any way by this Agreement and this Agreement does not, and shall not, enlarge any rights of third parties under any of the Assumed Liabilities.

4.     <u>Further Assurances</u>. If after Closing any further action is necessary, proper or desirable to carry out any purpose of this Agreement, then each Party will take such further action (including the execution and delivery of further documents) as the other Party reasonably requests to carry out such purpose. The foregoing will be at the expense of such requesting Party, except to the extent the Purchase Agreement otherwise allocates such expense to any other Person.

5.     <u>No Third Party Beneficiaries</u>. This Agreement shall be binding upon and inure solely to the benefit of the Parties and their successors and assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person, any legal or equitable right, benefit or remedy of any nature whatsoever.

6.     <u>Severability</u>. If any provision of this Agreement or the application thereof to any Person or circumstance becomes or is declared by a court of competent jurisdiction to be invalid, illegal, or incapable of being enforced, the remainder of this Agreement will continue in full force and effect and the application of such provision to other Persons or circumstances will be interpreted so as reasonably to effect the intent of the Parties hereto. The Parties further agree to replace such invalid, illegal, or unenforceable provision of this Agreement with a valid, legal, and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of such void or unenforceable provision.

7.     <u>Counterparts</u>. This Agreement may be executed and delivered (including by PDF, DocuSign or other similar electronic transmission) in one or more counterparts, and by the Parties hereto in separate counterparts, each of which when executed shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.

8.     <u>Governing Law</u>. This Agreement shall in all respects be construed in accordance with and governed by the substantive laws of the State of Texas without reference to its conflicts of law rules.

9.     <u>Notices</u>. Any notice, request, instruction or other document to be given hereunder by either Party to the other Party shall be made in accordance with the Purchase Agreement.

10.     <u>Effective Date</u>. This Agreement shall be deemed effective for all purposes at the Closing.

*[Remainder of page left intentionally blank; signature page follows]*



EXECUTION VERSION

     IN WITNESS WHEREOF, each Party hereto has executed this Agreement as of the date first above written.

**ASSIGNOR:**

_____

Alan L. Weiner, not in his individual capacity, but solely in his capacity as Receiver of Independent Texas Recyclers, LLC as described above

**ASSIGNEE:**

**BT Recycle, LLC_**
a Delaware limited liability company

By:    _____
Name: _____
Title:   _____

