**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CADENCE BANK,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| **V.** | § | Civil Action No.: 4:24-cv-01266 |
| | § | |
| **TRITGEN, LLC and INDEPENDENT** | § | |
| **TEXAS RECYCLERS, LLC,** | § | |
| | § | |
| *Defendants.* | § | |

**ORDER GRANTING RECEIVER'S <u>SECOND</u> MOTION FOR ENTRY OF ORDER: (I) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING THE RECEIVER'S ENTRY INTO AND PERFORMANCE UNDER THE ASSET PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

Upon consideration of the *Receiver's <u>Second</u> Motion for Entry of Order: (I) Authorizing the Sale of the Assets Free and Clear of All Liens, Claims, and Encumbrances; (II) Authorizing and Approving the Receiver's Entry Into and Performance Under the Asset Purchase Agreement; and (III) Granting Related Relief* (including all supplements thereto, the "Second Sale Motion")[1], filed on behalf of Alan L. Weiner, the court-appointed receiver (the "Receiver") over the business and assets of Independent Texas Recyclers, LLC ("ITR"); and the Court having reviewed and considered (i) the Second Sale Motion, (ii) the declaration of Alan L. Weiner in support of the Second Sale Motion (including all supplements thereto, the "Receiver Application"), (iii) that certain Asset Purchase Agreement attached to the Second Sale Motion as Exhibit 1 (including all amendments thereto as reflected in the supplements to the Second Sale Motion, the "Second

---

[1]      Capitalized terms not otherwise defined in this Order shall have the meaning given in the Second Sale Motion.

1

APA"); (iv) the arguments of counsel and the evidence presented at the hearing, if any, on the

Second Sale Motion (the "Sale Hearing"), and (v) the entire record in this case, of which the Court

takes judicial notice; and it appearing that the relief requested in the Second Sale Motion is in the

best interest of the Receivership Estate, its creditors, and other parties in interest; and after due

deliberation thereon and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT**:

A.    This Court has jurisdiction over this matter and over the property of the

Receivership Estate, including the Purchased Assets, to be sold, transferred and conveyed by the

Receiver to BT Recycle, a Delaware limited liability company (the "Second Purchaser") pursuant

to the Second APA.

B.    The statutory predicates for the relief sought in the Second Sale Motion and the

basis for the approvals and authorizations herein arise from 28 U.S.C. §§ 2001, 2004.

C.    This Order constitutes a final and appealable order.

D.    Proper, timely and sufficient notice of the Second Sale Motion, the Sale Hearing,

and the Second Transaction has been duly given in accordance with the United States Codes, the

Federal Rules of Civil Procedure, and the local rules of this Court, to each of the parties and

parties-in-interest (or their counsel of record) in this case, as the same may have been

appropriately modified by this Court.  No other or further notice of the Second Sale Motion is

required for the issuance of this Sale Order.

E.    A reasonable opportunity to object or be heard regarding the relief requested in

the Second Sale Motion and the Second Transaction was afforded to all interested parties and

entities.

F.      The Receiver's marketing and proposed sale to the Second Purchaser of the Purchased Assets have been conducted in good faith, at arms' length, and comport with the notions of fair play and due process.

G.      The Receiver has demonstrated compelling and sound business justifications for the Court to grant the relief requested in the Second Sale Motion, including, without limitation: (i) authorizing the sale by the Receiver to the Second Purchaser of the Purchased Assets free and clear of any and all security interests, liens, claims, charges, reservations of ownership, pledges, encumbrances, mortgages, adverse claims or rights of any Receivership Estate creditor including Cadence Bank; (ii) authorizing and approving the Receiver's entry into and performance under the Second APA; (iii) identifying the Second Purchaser as a good faith purchaser for value entitled to the corresponding protections under applicable law; and (iv) granting related relief. Such compelling and sound business justifications, which were set forth in the Second Sale Motion (including the declaration of the Receiver), and the arguments of counsel made, and evidence presented at, the Sale Hearing (if any), are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

H.      The compelling and sound business justifications include, without limitation, that: (i) the Receiver, with the assistance of its retained professionals, diligently and in good faith marketed the Purchased Assets to secure the highest or otherwise best offer; and (ii) the terms and conditions set forth in the Second APA, and the sale, transfer and assignment to the Second Purchaser of the Purchased Assets pursuant thereto for the purchase price set forth in the Second APA (the "Purchase Price") constitutes the highest and best offer obtainable for the Purchased Assets after a meaningful marketing process. A sale of the Purchased Assets at this time to the Second Purchaser maximizes the value of the Purchased Assets for the benefit of all

constituencies. Delaying approval of the Second Transaction is likely to result in an alternative outcome that will achieve less value for the Receivership Estate and its creditors.

I.      The Court finds that the circumstances of this case do not require compliance with the procedures set forth in 28 U.S.C. § 2002.

J.      Taking into account the ongoing costs of business operations and this receivership, the resources available to the Receiver, and the extensive sale and marketing process conducted by the Receiver for the Purchased Assets, the Second Transaction as contemplated in the Second Sale Motion is reasonable under the circumstances, and will maximize the return from the Purchased Assets to the Receivership Estate.

K.      The Receiver's entry into the Second APA is in the best interests of the Receivership Estate and creditors, and all other parties in interest, and it reflects a sound exercise of the Receiver's business judgment. The Receiver has articulated good, sufficient and sound business justifications and compelling circumstances for performance of obligations arising under the Second APA, including that the parties negotiated at arm's-length and in good faith, and the Second Transaction constitutes the highest or otherwise best proposal that the Receiver has received to date.

L.      The Receiver may sell the Purchased Assets to the Second Purchaser free and clear of all liens, claims and encumbrances as provided in the Second APA. Cadence Bank ("Cadence"), the senior secured lender whose claim exceeds the gross purchase price proposed under the Second APA, has consented to the Second Transaction.

**IT IS HEREBY ORDERED THAT:**

1.      The Second Sale Motion is hereby GRANTED as set forth herein.

2.       All responses or objections to the relief requested in the Second Sale Motion, if any, that have not been withdrawn, waived, or settled are hereby OVERRULED.

3.       This Sale Order shall be effective upon its entry.

4.       The Receiver is authorized to sell the Purchased Assets pursuant to the terms of this Sale Order and the Second APA.

5.       The Second APA is approved, and the Receiver is authorized and directed to take any and all actions necessary or appropriate to implement the Second APA and the transactions contemplated thereby, including entering into all other ancillary documents to be executed in connection with the Second APA, and taking such actions as may be reasonably necessary to perform its obligations under the Second APA and any ancillary documents.

6.       Upon the closing of the Second Transaction, the Purchased Assets shall be sold, assigned and transferred to the Second Purchaser free and clear of any and all Liens, Claims and Interests of Cadence Bank and any other Person, with such Liens, Claims and Interests to transfer and attach to the cash proceeds of the Second Transaction.  Without limiting the conveyance to Second Purchaser of the Purchased Assets free and clear of the Liens, Claims and Interests otherwise provided for in this Sale Order, upon the closing of the Second Transaction from the Receiver to the Second Purchaser, all such Liens, Claims and Interests that had attached to the Purchased Assets shall be canceled and extinguished as to the applicable Purchased Assets, and any and all Liens, Claims and Interests shall be transferred to the proceeds of the Second Transaction in the hands of the Receiver.  Cadence shall execute and deliver a release of lien and/or UCC-3 Termination Statement in recordable form as reasonably requested by Receiver and/or Second Purchaser. To the fullest extent of the law, the reversal or modification on appeal

of any provision of this Order does not affect the validity of a closing of the Second Transaction and such closing shall moot any appeal.

7.      Except as expressly provided in the Second APA, the Second Purchaser is not assuming nor shall it or any affiliate of the Second Purchaser be in any way liable or responsible for, directly or indirectly, as a successor or otherwise, any liabilities, debts, or obligations of ITR or the Receiver or the Receivership Estate of any nature or kind, whether legal or equitable, or matured or contingent, in any way whatsoever relating to or arising from ITR's or the Receiver's ownership or use of the Purchased Assets prior to the closing of the Second Transaction or other subsequent consummation of the transactions contemplated by the Second APA, or any liabilities relating to continuing or other conditions existing on or prior to the closing of the Second Transaction or other subsequent consummation of the transactions contemplated by the Second APA.

8.      The transfer of the Purchased Assets to the Second Purchaser pursuant to the Second APA does not require any consents other than as specifically provided for in the Second APA and constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Second Purchaser with all right, title and interest of ITR and the Receiver in and to the Purchased Assets free and clear of all Liens, Claims and Interests whatsoever.  As set forth in the Second APA, except for Receiver's representation and warranty to Second Purchaser that the Purchased Assets will be conveyed to Second Purchaser free and clear of any Liens, Claims and Interests, the Second Purchaser acquires the Purchased Assets as-is, where is, without any other warranty, express or implied.

9.      Upon entry of this Sale Order and upon sole approval by the Second Purchaser: (i) the Second Purchaser is hereby authorized to assume the Assigned Contracts (as defined in the

Second APA) in accordance with the terms of the Second APA, in each case free and clear of all Liens, Claims and Interests; and (ii) the Receiver, for and on behalf of ITR, shall execute and deliver to the Second Purchaser, such assignment documents as may be reasonably necessary to sell, assign and transfer the Assigned Contracts to Second Purchaser. Upon closing of the Second Transaction: (i) the Assigned Contracts shall be transferred and assigned to Second Purchaser, and shall remain in full force and effect for the benefit of the Second Purchaser; (ii) except as provided in the Second APA, ITR and the Receiver shall be relieved from any liability arising after the closing of the Second Transactions with respect to the Assigned Contracts; and (iii) the Second Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract.  With the exception of the Gasmer Facility lease, any contract that is not assigned to and assumed by the Second Purchaser at the closing of the Second Transaction shall be deemed terminated by the Receiver, for and on behalf of ITR, and all liabilities related to such termination shall and can only be asserted as against the Receivership Estate and pursuant to the Receivership Order.  The Receiver is authorized to terminate the Gasmer Facility lease post-closing of the Second Transaction in accordance with the terms of the Second APA.

10.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets to be sold, transferred or conveyed pursuant to the Second APA are hereby directed to surrender possession and control of the Purchased Assets to the Second Purchaser on the Closing Date, other than its rights of possession held under and in accordance with the terms of the Assigned Contracts.

11.     The Receiver shall retain the Second Transaction proceeds, net of customary and appropriate closing costs and payment of administrative expenses relating to the pursued liquidation auction (including payments to PPL), pending further direction of the Court and

expressly excepting any deposit return authorized under Paragraph 19 hereof.

12.     Except as to compel delivery of the Purchased Assets contemplated in the Second Transaction, the Second Purchaser shall not sue, or bring or otherwise pursue any actions, causes of action, claims, complaints, grievances, demands, orders, prosecutions or suits against ITR, Cadence, the Receiver, any representative, agent, or professional employed by the Receiver,  on the basis of or in any way relating to any of the representations, warranties or covenants (to the extent such covenants related to the performance of obligations prior to the closing of the Second Transaction) of the parties in the Second APA or in any document in connection with the Second APA delivered by any party or by the Receiver pursuant to the Second APA or in connection with the transactions contemplated hereby. The foregoing covenant not to sue shall not apply to any breach of the Second APA by the Receiver or any other Person.

13.     The transactions contemplated by the Second APA have been bargained for and undertaken by the Second Purchaser and the Receiver at arm's length, without collusion, and in good faith; neither the Second Purchaser nor the Receiver has engaged in any conduct that would cause or permit this Sale Order or the Second APA to be avoided. The consideration provided by the Second Purchaser for the Purchased Assets under the Second APA is hereby deemed to constitute reasonably equivalent value and fair consideration under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Second Purchaser is entitled to all protections of a good faith transferee for value.

14.     Effective as of the closing, the Second Transaction shall constitute a legal, valid, and effective transfer of the Purchased Assets to the Second Purchaser and shall vest the Second Purchaser with all rights, title, and interest in, to and of the Purchased Assets free and clear of any

8

and all Liens, Claims and Interests of any Person and as otherwise provided under the Second APA.

15.    To the extent any provision of this Sale Order is inconsistent with the terms of the Second Sale Motion, or any order or pleading with respect to the Second Sale Motion, this Sale Order shall govern. Except as expressly provided herein to the contrary, nothing in this Sale Order shall alter or amend the Second APA and the obligations of the Receiver and the Second Purchaser thereunder.

16.    The terms and provisions of the Second APA and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Receiver, the Receivership Estate, its creditors, the Second Purchaser, ITR, and Cadence, and each of their respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all Persons asserting any Liens, Claims and/or Interests against the Purchased Assets to be sold to the Second Purchaser pursuant to the Second APA.

17.    The failure specifically to include or to reference any particular provision of the Second APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Second APA be authorized and approved in its entirety.

18.    This Sale Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon entry hereof.

19.    The Receiver and the Second Purchaser are authorized to close under the Second APA at any time after entry of this Order, subject to the terms of the Second APA.  In the event this Court ordered the Receiver to consider other offers, and any such offer was accepted by the Receiver and closes as a higher and better offer, than all references in this Order to "Second Purchaser" shall refer to the purchaser whose transaction actually closes; and upon closing of a

transaction that is higher and better than the Second Transaction described in the Second APA, the Receiver shall refund the deposit as expressly provided under Section 12 of the Second APA.

20.     The Receiver covenants and agrees to take any and all actions reasonably necessary to consummate and carry out the spirit and intent of the Second Transaction.

21.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Sale Order, including, but not limited to, any matter, claim, or dispute arising from or relating to the Second APA and the implementation of this Sale Order.

**SO ORDERED.**

Order prepared by:
Kyle S. Hirsch
Justin D. Hanna
BRYAN CAVE LEIGHTON PAISNER LLP
2200 Ross Avenue, 4200W
Dallas, Texas 75201
*Attorneys for Receiver Alan Weiner of Focus Management Group*